# Don G. Wilson and Lysle R. Hazelgrove, Jr., Trustees

## v.

## Geneva D. Rowlett

Record No. 850900

June 10, 1988

Present: All the Justices

*Michael F. Urbanski (T. Daniel Frith, III; Woods, Rogers & Hazlegrove*, on brief), for appellants.

*C. Richard Cranwell (Cranwell, Flora & Moore*, on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

In this appeal, the dispositive issue is whether trustees of a group life insurance trust had a duty to notify a participant in the trust of the termination of his life insurance coverage even though the language of a booklet describing his rights under the policy in his possession unambiguously indicated the conditions of such termination.

Robert Lee Rowlett, as an active employee of Hemingway Transport, Inc. (Hemingway), and a member of the Teamsters Union, was covered under a group life insurance policy issued as a part of a collective bargaining agreement between Hemingway and the Teamsters Union. Don G. Wilson and Lysle R. Hazelgrove, Jr., as trustees of the Teamsters Union's health and welfare fund (the trustees), were the policyholders of the group life insurance policy. The trustees were also trustees of a pension fund which provided disability benefits to Hemingway employees, including Rowlett.

During Rowlett's employment, Hemingway made weekly payments to the trustees for the premium payments on the group life insurance policy which covered Rowlett as an active employee of Hemingway. The trustees transmitted those payments to the insurance company, as provided in the trust agreement. On May 5, 1972, Rowlett terminated his employment with Hemingway because of his total disability. Hemingway stopped making payments to the trustees for premiums on Rowlett's life insurance at the end of the calendar month of his termination of employment because, according to the terms of the policy, Hemingway's obligation to pay those premiums ended when Rowlett ceased active employment.

Because Rowlett terminated his employment due to his disability, under the terms of the policy, Rowlett's life insurance coverage continued for a period of one year without payment of premium. Rowlett had a booklet describing his rights under the policy, which provided in plain and unambiguous language that he could extend his coverage indefinitely beyond the period of one year by annually submitting proof of his continued disability. The policy also gave Rowlett the right to convert his interest in the group policy to an individual policy provided he applied in writing and paid the first premium within 31 days of the termination of his group insurance coverage. Rowlett neither furnished proof of his continued disability nor applied for individual coverage within the required periods. Therefore, his coverage under the group policy ceased one year after the May/June termination of Hemingway's contributions, and his right to convert the policy expired 31 days thereafter.

After Rowlett died in April 1978, Mrs. Rowlett applied for the death benefits under the group life insurance policy. Her application was denied because the trustees had stopped making premium payments on behalf of Rowlett and Rowlett had not supplied the required proof of continued disability. Mrs. Rowlett sued the trustees in March 1979, contending they violated their duty to notify Rowlett of (1) the termination of the policy because of their non-payment of premiums, and (2) of his obligation to furnish proof of continued disability in order to obtain a waiver of premiums.

Finding that the trustees had a continuing duty to notify Rowlett of their failure to pay the insurance premiums, the trial court

overruled the trustees' plea of the statute of limitations and, after a hearing on the merits, entered judgment for Mrs. Rowlett.

The trustees contend that Mrs. Rowlett's right of action accrued when the insurance policy lapsed and could not be reinstated or converted to an individual policy. On the other hand, Mrs. Rowlett maintains that "the statute of limitations did not start running . . . until there was a clear communication to Mr. Rowlett that the trust has been terminated as to Mr. Rowlett."

■ In our opinion, the trust relationship ceased when Rowlett terminated his active employment with Hemingway. The plain import of the unambiguous language of the booklet was that the trustees' duty to transmit premiums to the insurance company ended at that time. Rowlett had a copy of the booklet and, therefore, was charged with knowledge that his participation in the trust had terminated and that, if he wanted continued coverage, it was his responsibility to take the necessary action. *See Peoples Life Ins. Co. v. Parker*, 179 Va. 662, 667, 20 S.E.2d 485, 487 (1942). Under the circumstances, we hold that the trustees were under no duty to advise Rowlett of the termination of the trust and that the statute of limitations began to run at the time the trust terminated.

Mrs. Rowlett contends that the policy provided that Rowlett could not have applied for a waiver of premiums until the trustees stopped paying them. Therefore, she argues, Rowlett did not have an opportunity to apply for a waiver because the trustees had not notified him that they were no longer paying the premiums.

Because Rowlett had a copy of the booklet, however, he was charged with knowledge that the trustees would not pay the premiums after his active employment ceased. The inescapable inference to be drawn from that knowledge is that the trustees did not pay the premiums. Therefore, Rowlett was bound to know that he could have applied for continued coverage in the manner provided by the policy.

■ In an effort to toll the statute of limitations, Mrs. Rowlett also relies upon the rule which we have applied in a doctor-patient case, *see Farley v. Goode*, 219 Va. 969, 979-80, 252 S.E.2d 594, 599-600 (1979), and in lawyer-client cases, *see Keller v. Denny*, 232 Va. 512, 517-18, 352 S.E.2d 327, 329-30 (1987) and *McCormick v. Romans & Gunn*, 214 Va. 144, 148-49, 198 S.E.2d 651, 654-55 (1973). That rule is inapposite because it is premised upon a *continuing* relationship. As we have pointed out, Rowlett was

charged with knowledge that the trustees' relationship with him ended in May 1972.

Accordingly, we will reverse the judgment of the trial court and enter final judgment for the trustees.

*Reversed and final judgment.*