STATE OF NORTH CAROLINA v. ANDREW WAYNE GROSS

No. 9025SC1137

(Filed 17 September 1991)

1. **Criminal Law § 34.2 (NCI3d)— sexual offense—prior offense too remote—erroneous admission not prejudicial**

   There was no prejudicial error in a prosecution for sexual offense, kidnapping and attempted first degree sexual offense where the court admitted testimony from a witness who had been sexually assaulted by defendant approximately seven years before the crimes alleged here. The passage of time between the alleged assaults on the witness and those against the victims here was so great as to make the existence of any plan or scheme tenuous at best; however, the State had already introduced corroborated testimony from 3 witnesses who had been sexually assaulted by defendant and there was no reasonable possibility that the outcome of the trial would have been any different had the testimony not been allowed.

   **Am Jur 2d, Evidence §§ 320, 330.**

2. **Criminal Law § 169 (NCI3d)— sexual offense—evidence of prior record excluded—answer not recorded—issue not preserved**

   Defendant in a prosecution for sexual offense and kidnapping did not preserve for appeal the question of whether the court erred by refusing to allow him to testify about his criminal

record where the record does not indicate what the witness would have answered.

**Am Jur 2d, Appeal and Error §§ 603, 604.**

3. **Rape and Allied Offenses § 5 (NCI3d)— sexual offense — sufficiency of evidence**

There was sufficient evidence of attempted first degree sexual offense and multiple counts of first degree sexual offense.

**Am Jur 2d, Sodomy § 45.**

4. **Kidnapping § 1.2 (NCI3d)— first degree kidnapping—parental consent—evidence sufficient**

There was sufficient evidence of the first degree kidnapping of a 15 year old victim, despite defendant's contention that the victim's mother was never asked whether she had consented, where the mother testified that she returned home to find a note from her son saying that he was going out with a friend and would be back around 11:30 p.m.; she fussed at him the next morning when he came home; and she did not even know defendant at that time. This evidence was sufficient for the jury to infer a lack of parental consent.

**Am Jur 2d, Abduction and Kidnapping §§ 15, 16.**

5. **Rape and Allied Offenses § 6.1 (NCI3d)— first degree sexual offense—no instruction on second degree sexual offense—error**

The trial court erred in a prosecution for first degree sexual offense by not giving an instruction on second degree sexual offense where defendant presented exculpatory evidence in addition to his general denials which warranted an instruction on second degree sexual offense.

**Am Jur 2d, Sodomy §§ 30, 95; Trial §§ 1427, 1428.**

APPEAL by defendant from judgments entered 2 August 1990 by *Judge Forrest A. Ferrell* in CATAWBA County Superior Court. Heard in the Court of Appeals 28 August 1991.

Defendant was indicted and convicted of four counts of first degree sexual offense, two counts of first degree kidnapping, and one count of attempted first degree sexual offense. Defendant was sentenced to imprisonment for each of the respective crimes as follows: four life terms; two seven year terms; and one five year term.

STATE v. GROSS

[104 N.C. App. 97 (1991)]

Because of the victim's ages, and because of the very nature of the crimes alleged, we refer to the victims by their first names only.

Lewis testified for the State that in June 1989 he was 16 years old. He went to the defendant's trailer at Baker's Mountain, and while there Lewis drank a few beers and smoked pot along with other boys who were there. After finishing the beer and pot everyone went to bed. The defendant asked Lewis to come back to his bedroom with him. In the bedroom the defendant told Lewis he did not need to sleep on the floor, but that he should sleep in the bed with him. The defendant also told Lewis that he did not allow street clothing in his bed. Lewis removed his jeans and climbed into bed. Lewis was later awakened by the defendant who was "messing" with Lewis' "privates" with his hand. Lewis pulled the defendant's hand away and "told him that [he] was not that way." The defendant then handcuffed Lewis, placed a .380 automatic pistol against Lewis' "kidney," and took Lewis to a barn outside. The defendant told Lewis that he would kill him if he awoke any of the other boys. Once inside the barn the defendant pulled down Lewis's pants, put him on the floor, engaged in anal intercourse with him and ejaculated inside of him.

Keith, age 15, testified that around 30 July 1989 he went to the defendant's home. When Keith arrived several other people were there. Keith drank beer and liquor and played poker. Between 12:00 a.m. and 1:00 a.m. the defendant began to "run everyone off and started to go to bed." Keith and two others remained for the night. The defendant told Keith that he "could bunk with him." Keith went to the defendant's bedroom and after a short conversation the defendant told him "you don't have to sleep in your clothes, I ain't going to mess with you." Keith took off his pants, shirt and shoes. Later Keith woke up and "looked down and [saw that the defendant] was rubbing his hands on [Keith's] private parts." Keith demanded that the defendant stop. The defendant pulled out a gun and told Keith that "if [he] didn't quiet down [ ] he would kill [him]." The defendant then handcuffed Keith's hands behind his back and took him out to the barn. In the barn the defendant performed fellatio on Keith and forced Keith to perform fellatio on him. Afterwards, a car drove into the driveway. The defendant then took Keith into the barn's loft, sat him on a sofa and told him not to move or make a sound. While the defendant was looking to see who it was, Keith managed to pull

the handcuffs down behind his legs so that the handcuffs were in front of him. The defendant then took Keith out of the barn, through a field and up to the back corner of the defendant's house. The defendant told Keith that he was going back to the house to get Keith's clothing and for Keith not to leave. Keith waited about five minutes and then ran to the front door, went inside and woke Chuck, another boy who was spending the night there. Keith told Chuck, "lets get out of [ ] here, [defendant] is queer and been trying to do all kinds of stuff to me." Keith then "heard somebody coming and [ ] went to the corner and put a blanket over [his] head and set [sic] down." The defendant walked over to Keith and pulled the blanket off of him. Defendant then picked Keith up and carried him back to his bedroom. The defendant again handcuffed Keith's hands behind his back and left the room. When the defendant returned, he placed Keith on a bed and attempted to have anal intercourse but was unable to penetrate him. The defendant then told Keith, "[i]f [he] told anybody he would kill [him]." Keith then got up, put his clothes on and left.

Phillip testified that at age 14 in November 1989 he went to the defendant's trailer with some others. When Phillip arrived at the defendant's trailer he began drinking beer and liquor, smoking pot, and playing poker. Later that evening everyone left except a boy named Wayne, the defendant, and Phillip. The defendant then told Phillip to go back to his bedroom. Phillip did and when the defendant got there he "got the gun [from the dresser] and said that [Phillip] had to take off [his] clothing and to get in the bed and said that if [Phillip] said anything or did anything that he would kill [him]." The gun was a .20 gauge sawed off double barrelled shotgun. Mr. Gross then had anal sex with Phillip.

The State also called Michael Joe Reep, age 24, to the stand. Mr. Reep testified that approximately seven years earlier (when he was 17) he was living in his uncle's trailer. At that time the defendant came over to the trailer and threatened to beat him up if he did not have anal sex with the defendant. He also testified that the defendant hit him in the face with his fist which had a large class ring on it.

On 13 December 1989 Detective Crouse of the Catawba County Sheriff's Department obtained a search warrant for the defendant's premises. In his search Detective Crouse seized the .20 gauge dou-

**STATE v. GROSS**

[104 N.C. App. 97 (1991)]

ble barrelled shotgun, but was unable to locate a .380 caliber pistol on the premises.

The defendant testified that he knew Lewis, Keith, and Phillip. The defendant also testified that he did drink but did not smoke marijuana nor allow the boys to smoke marijuana at his trailer. He stated that he had never made any sexual advances toward any of the boys, including Mr. Reep, and he had never used a firearm against them. Defendant further testified that he had never engaged in any homosexual acts, that he had lived with two or three different women, and had fathered four children. Defendant admitted that he once owned a .380 automatic pistol, but stated that he had sold it to his brother in February or March of 1989. Defendant also found a broken pair of handcuffs in 1981 which he kept in his tool box. The tool box containing the handcuffs was stolen from his front porch in April 1989. Defendant also testified that he had lost his high school class ring before entering the Army in 1968 and that he did not attend college.

Keith Collins, age 19, testified that he lived with defendant during a portion of the summer of 1989. He was never assaulted by the defendant and as far as he knew neither James nor Keith spent the night at the defendant's home in June of 1989. Mr. Collins also testified that the defendant kept a broken pair of handcuffs in a tool box.

The defendant's evidence also showed that Mr. Ronald Gray stayed at the defendant's trailer on Baker's Mountain from 17 November 1989 through 27 November 1989. Mr. Gray testified that during his stay with the defendant, Phillip stayed there about three days, and that nothing unusual happened during those three days.

Other witnesses for the defense testified that the victim Keith's reputation for honesty was not very good. From verdicts of guilty and judgment imposing sentences, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Charles M. Hensey, for the State.*

*Christian, Houck, Sigmon & Green, by Daniel R. Green, for defendant-appellant.*

STATE v. GROSS

[104 N.C. App. 97 (1991)]

EAGLES, Judge.

I

[1] Defendant first contends that the trial court committed prejudicial error by admitting Michael's testimony that he had been sexually assaulted by the defendant approximately seven years before the crimes alleged here. We disagree that the error was prejudicial.

> [E]vidence of prior sex acts may have some relevance to the question of a defendant's guilt of the crime charged if it tends to show a relevant state of mind such as intent, motive, plan, or opportunity. *See State v. Boyd*, 321 N.C. 574, 364 S.E.2d 118 (1988); *State v. Gordon*, 316 N.C. 497, 342 S.E.2d 509 (1986); *State v. DeLeonardo*, 315 N.C. 762, 340 S.E.2d 350 (1986). Such evidence is not offensive to the general prohibition against character evidence because it is admitted not to prove defendant acted in conformity with conduct on another occasion but rather as circumstantial proof of defendant's state of mind. *State v. Weaver*, 318 N.C. 400, 348 S.E.2d 791 (1986). Indeed, . . . we have stated that "evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." [Citation omitted.]

> * * *

> Nonetheless, the admissibility of evidence of a prior crime must be closely scrutinized since this type of evidence may put before the jury crimes or bad acts allegedly committed by the defendant for which he has neither been indicted nor convicted.

*State v. Jones*, 322 N.C. 585, 588, 369 S.E.2d 822, 823-824 (1988).

The defendant relies upon *State v. Jones*, 322 N.C. 585, 369 S.E.2d 194 (1988). In Jones, the defendant was convicted of two counts of first degree rape and three counts of taking indecent liberties with a child. The acts allegedly occurred over the course of almost three years, and were committed against the defendant's twelve year old stepdaughter. *Id.* at 586, 369 S.E.2d at 822. During the State's presentation of evidence, a witness testified that she had also been sexually assaulted by the defendant on numerous occasions. *Id.* The alleged assaults occurred some seven years before

and were carried out in much the same manner. *Id.* The court ordered a new trial stating:

> Evidence of other crimes must be connected by point of time and circumstance. Through this commonality, proof of one act may reasonably prove a second. However, the passage of time between the commission of the two acts slowly erodes the commonality between them. The probability of an ongoing plan or scheme then becomes tenuous. Admission of other crimes at that point allows the jury to convict defendant because of the kind of person he is, rather than because the evidence discloses, beyond a reasonable doubt, that he committed the offense charged.

*Id.* at 590, 369 S.E.2d at 824.

Here, we hold that it was error to admit Michael Reep's testimony. The passage of time between the alleged assaults upon Mr. Reep and those against the victims here is so great as to make the existence of any plan or scheme tenuous at best. The issue before us now is whether the admission of this testimony was prejudicial error. After careful review of the record before us, we conclude it was not prejudicial error.

"An error is not prejudicial unless a different result would have been reached at the trial if the error in question had not been committed. N.C. Gen. Stat. § 15A-1443." *State v. Smith*, 87 N.C. App. 217, 222, 360 S.E.2d 495, 498 (1987), *disc. review denied*, 321 N.C. 478, 364 S.E.2d 667 (1988). Here, the State had already introduced testimony from Lewis, Keith, and Phillip that each had been sexually assaulted by the defendant. Each boy's story was corroborated by their parents or friends. While Michael Reep's testimony was inadmissible, "the defendant here has not persuaded us that there exists any reasonable possibility that the outcome of the trial would have been any different had the testimony not been allowed." *Id.* at 222, 360 S.E.2d at 498. Defendant's first assignment of error is overruled.

## II

[2] Defendant next argues the trial court erred in refusing to allow him to testify about his criminal record. However, the record does not indicate what the witness would have answered had he been permitted to do so. The defendant has failed to properly

preserve this issue for appeal. *State v. Kirby*, 276 N.C. 123, 132-133, 171 S.E.2d 416, 423 (1970).

### III

**[3]** By his next assignment of error defendant argues the trial court erred by denying defendant's motions to dismiss all charges other than the first degree kidnapping of Keith. We disagree. The defendant admits in his brief that the State introduced "evidence of each element of each offense." Indeed, the record is replete with evidence sufficient to support each conviction.

### IV

**[4]** Defendant also argues the trial court erred by failing to dismiss the charge of first degree kidnapping involving Keith, the 15 year old alleged victim. G.S. 14-39 defines kidnapping as follows:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

> * * *

> (2) facilitating the commission of any felony or facilitating flight of any person following the commission of a felony. . . .

Defendant contends the conviction should be set aside because Keith's mother, who "was present in the court and testified for the State, [ ] was never asked whether or not she consented to the defendant's alleged confinement, restraint or removal o[f] her son." This argument is wholly without merit. Keith's mother testified that she returned home to find a note from her son saying that he was going out with a friend and would be back around 11:30 p.m. When Keith came home the next morning his mother "started fussing at him for not calling or not coming home. . . ." Further, Keith's mother testified on cross-examination that she did not even know the defendant at the time. This evidence is sufficient for the jury properly to infer a lack of parental consent. This assignment is overruled.

V

**[5]** Finally, defendant contends the trial court in the first degree sexual offense case involving Lewis erred in refusing to instruct the jury on the lesser included offense of second degree sexual offense. " 'The trial court is required to submit lesser included degrees of the crime charged in the indictment when and only when there is evidence of guilt of the lesser degrees.' [Citations omitted.]" *State v. Watkins*, 89 N.C. App. 599, 604, 366 S.E.2d 876, 879, *disc. review denied*, 323 N.C. 179, 373 S.E.2d 123 (1988) (quoting *State v. Jones*, 304 N.C. 323, 330-331, 283 S.E.2d 483, 487-488 (1981)).

> "The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense [ ], and there is *no* evidence to negate these elements other than defendant's denial that he committed the offense, the trial court should properly exclude from jury consideration the possibility of a conviction of [a lesser offense]. *Strickland*, 307 N.C. at 293, 298 S.E.2d at 658."
>
> Where a defendant denies having committed a complete offense, [ ], but there is evidence as to every element which negates that denial, application of *Strickland* would indeed be proper. In that situation, the jury would be correctly charged to find the defendant guilty of [the offense] or not guilty. However, [ ], where the only evidence of the defendant's innocence as to a particular *element* may rest solely on the defendant's denial, then reliance on *Strickland* would be misplaced.

*State v. Williams*, 314 N.C. 337, 352-53, 333 S.E.2d 708, 718-19 (1985).

In the instant case the defendant did not deny an element of first degree sexual offense. Rather, he denied the complete offense for each of the indictments, and the State presented evidence to negate each denial. Defendant testified:

Q: Did you ever assault any of these three boys sir?

A: No sir.

Q: Or this Mickeal [sic] Joe Reep[?]

A: No sir.

Q: Did you ever make any sexual advances or assaults on any of these people.

A: No sir.

The issue before us now is whether the defendant presented any exculpatory evidence other than his general denials. Here, the defendant admitted that he once owned a .380 caliber pistol, but testified that he had sold the weapon before the alleged assaults on Lewis. Keith Collins testified that the defendant had sold that pistol, and Ronald Gray testified that he saw the defendant sell the pistol to his brother. Nathan Dellinger also testified that while he had seen the .380 pistol in March of 1989 he did not see the gun in June or July despite visiting the defendant on the weekends. Finally, Detective Crouse testified that he was unable to locate the pistol during his search of defendant's trailer.

This evidence warrants an instruction on second degree sexual offense in the alleged assault on Lewis which allegedly involved a .380 caliber pistol. Accordingly, we reverse the first degree sexual offense conviction involving Lewis and remand for a new trial. Because the defendant did not present any other exculpatory evidence other than his own general denials, we find no error in the remaining first degree sex offense convictions.

As to No. 90 CrS 1007-1011, 1013, no error.

As to No. 90 CrS 1006, reversed and remanded for new trial.

Judges JOHNSON and PARKER concur.