STATE OF NORTH CAROLINA v. JOHN BILLY FRAZIER

No. COA94-1140

(Filed 5 December 1995)

**1. Evidence and Witnesses § 373 (NCI4th)— common plan or scheme to abuse adolescent female family members— admissibility of evidence**

In a prosecution of defendant for taking indecent liberties with a child and rape, the trial court did not err in admitting testimony which tended to demonstrate a common plan or scheme by defendant to sexually abuse adolescent female family members, and there was no merit to defendant's contentions that the testimony was not sufficiently similar to the conduct for which he stood trial and that the testimony was too remote in time to be admissible, since all the females in this case testified that defendant looked after them when they were young and began his misconduct by touching them and fondling them; defendant began to touch more invasively as they grew older; defendant had sexual intercourse with all but one of them; defendant convinced each of them to remain quiet about the abuse by threatening to send them away or by threatening to stop taking care of their financial needs; all of the witnesses thus testified to similar forms of abuse which demonstrated a distinct pattern over a protracted period; defendant's prior acts of sexual abuse occurred over a period of approximately twenty-six years; and an eight-year lapse in

1

defendant's abusive conduct did not render the witnesses' testimony too remote to be admissible. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Rape §§ 71, 73.**

**Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. 77 ALR2d 841.**

**Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offenses. 88 ALR3d 8.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

2. **Evidence and Witnesses § 3058 (NCI4th)— defendant's prior sexual misconduct—cross-examination improperly allowed—defendant not prejudiced**

   In a prosecution of defendant for taking indecent liberties with a child and rape, the trial court erred in allowing the State to cross-examine defendant about prior acts of sexual misconduct involving other female family members after defendant denied he had abused those family members, since a witness may be cross-examined about specific instances of misconduct only if the instances are probative of the witness's character for truthfulness or untruthfulness, and instances of sexual misconduct are not probative of a witness's character for truthfulness or untruthfulness; however, defendant was not prejudiced by such error where evidence of defendant's alleged prior acts of sexual misconduct had already been admitted through the testimony of other witnesses. N.C.G.S. § 8C-1, Rule 608(b)

**Am Jur 2d, Evidence §§ 409, 418, 430; Witnesses §§ 965, 966, 968, 969.**

**Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. 77 ALR2d 841.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

**3. Evidence and Witnesses § 2891 (NCI4th)— sexual misconduct by wife—cross-examination of defendant—absence of prejudice**

A defendant charged with taking indecent liberties and rape failed to show that he was prejudiced by the State's cross-examination of him concerning acts of sexual misconduct by his wife.

**Am Jur 2d, Evidence §§ 404-412; Witnesses §§ 811, 812.**

**Admissibility of evidence of commission of similar crime by one other than accused. 22 ALR5th 1.**

**4. Evidence and Witnesses § 3058 (NCI4th)— cross-examination of defendant's wife—sexual misconduct—absence of prejudice**

While it was error for the trial court to allow the State to cross-examine defendant's wife about specific instances of sexual misconduct committed by her because they were not probative of her veracity, defendant was not prejudiced by this error since the questions related to the wife's conduct rather than defendant's actions. N.C.G.S. § 8C-1, Rule 608(b).

**Am Jur 2d, Evidence §§ 404-412; Witnesses § 904.**

**Admissibility of evidence of commission of similar crime by one other than accused. 22 ALR5th 1.**

**5. Evidence and Witnesses § 3033 (NCI4th)— defendant's wife—attempt to get victims to change stories—probative of veracity**

The State could properly cross-examine the wife of a defendant on trial for taking indecent liberties with children and rape about whether she had attempted to get the victims to change their stories since such specific instances of conduct are probative of the wife's veracity. N.C.G.S. § 8C-1, Rule 608(b).

**Am Jur 2d, Evidence § 404; Witnesses §§ 902, 903.**

**6. Evidence and Witnesses § 2873 (NCI4th)— cross-examination of defense witness—actions to get not guilty verdict—probative of credibility**

The State's cross-examination of a defense witness in a prosecution for rape and taking indecent liberties with children as to whether she, defendant, and defendant's wife would "do anything in this case to get a verdict of not guilty" was probative of the

credibility of the witness and was permissible under N.C.G.S. § 8C-1, Rule 611(b).

**Am Jur 2d, Evidence § 434; Witnesses §§ 811, 878-880, 885, 886.**

7. **Evidence and Witnesses § 3064 (NCI4th)— impeachment— extrinsic evidence to rebut denial—collateral matter— absence of prejudice**

In a prosecution of defendant for rape and taking indecent liberties with children, it was improper for the State to use extrinsic evidence to rebut the denial by defendant's wife that she had attempted to show the breasts of another woman to defendant by questioning the other woman about this event, but this rebuttal testimony did not prejudice defendant because it pertained to a collateral matter. N.C.G.S. § 8C-1, Rule 608(b).

**Am Jur 2d, Witnesses §§ 992-994, 998.**

8. **Criminal Law § 433 (NCI4th)— prosecutor's closing argument—remarks about defendant and his wife—new trial not required**

The prosecutor's closing arguments in a trial for rape and taking indecent liberties accusing witnesses of not being truthful on the witness stand, questioning the morals of defendant's wife, and calling defendant a "monster," to which defendant made no objection, were not so prejudicial as to require a new trial. Nor is defendant entitled to a new trial based upon the prosecutor's reference to defendant and his wife as "just as evil and just as sorry and just as mean as two despicable people could ever be on this earth" where the trial court indicated its disapproval of this comment by sustaining defendant's objection thereto.

**Am Jur 2d, Trial §§ 681, 682, 692, 693.**

**Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

**9. Criminal Law § 545 (NCI4th)— prosecutor's remarks about spectators—mistrial denied**

Defendant was not entitled to a mistrial where the prosecutor remarked that a man and woman were making noises as witnesses testified; the trial court then excused the jury and out of the jury's presence warned everyone in the courtroom to refrain from making noises; defendant's counsel made a motion for mistrial, arguing that the prosecutor's actions prejudiced defendant; and the trial court admonished the prosecutor, denied the motion for mistrial, and the jury returned.

**Am Jur 2d, Trial §§ 254, 255, 566.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

**10. Indictment, Information, and Criminal Pleadings § 53 (NCI4th)— alleged variance between indictment and proof—no error**

In a prosecution of defendant for taking indecent liberties with a minor and rape, there was no merit to defendant's contention that there was a fatal variance between the indictments and the evidence presented at trial, since specificity regarding dates diminishes in child abuse cases, the indictments alleged that defendant's sexual misconduct occurred "on or about" certain dates, and the State took adequate measures to put defendant on notice that the dates alleged should not be relied upon for any degree of certainty.

**Am Jur 2d, Indictments and Informations § 267.**

**Propriety and effect of amendment of indictment, or of variance between indictment and proof—Supreme Court cases. 85 L. Ed. 2d 878.**

Judge JOHN dissenting.

Appeal by defendant from judgments and commitments entered 4 March 1994 by Judge James C. Davis in Northampton County Superior Court. Heard in the Court of Appeals 29 August 1995.

In January and March of 1993, defendant was indicted for ten counts of taking indecent liberties with a child and for two counts of

STATE v. FRAZIER

[121 N.C. App. 1 (1995)]

first degree rape. The named victims of defendant's alleged crimes were his two stepgranddaughters (referred to as L. and S.).

At trial, fourteen-year-old L. testified that defendant began touching her inappropriately on her "butt [and] boobies" when she was nine or ten. She testified that one day when she was ten and was in defendant's trailer, defendant's wife, Polly Frazier (hereinafter Polly) told her to go in their bedroom to get a cake as a reward for helping Polly clean the trailer. Polly left for town and when L. went into the bedroom to get her reward, defendant grabbed her and pushed her on the bed. Defendant took off L.'s clothes and had intercourse with her. L. said that she started crying and told defendant to stop because he was hurting her, but defendant told her to shut up. After he was finished, defendant told her to put her clothes back on and not to tell anyone or he would "send [her] away." L. stated that she did not tell anyone because defendant had threatened to send her away and she did not think anyone would believe her. L. testified that defendant raped her a second time when she was eleven or twelve when she and defendant were alone in defendant and Polly's trailer. After defendant was finished, he once again told L. that if she told anyone, he would send her away.

L. eventually told her cousin, Tammy, that defendant "had messed with" her. This disclosure occurred after Polly took L. to a doctor who told them that L. needed to be on birth control pills. L. then told her sister, S., who told L. that defendant had also "messed with her," but that defendant had not had sexual intercourse with her. L. then disclosed the sexual abuse to the school psychiatrist and a police detective.

Sixteen-year-old S. also testified. She stated that defendant began touching her inappropriately when she was thirteen and that the conduct occurred two to three times per week until she was fifteen. Defendant would fondle her breasts and stick his hand down her pants. Defendant told S. not to tell anyone. S. did not tell anyone until after L. revealed that defendant had sexually abused her.

Over defendant's objection, the trial court admitted the testimony of three female members of defendant's family who told how defendant sexually abused them when they were young girls.

Defendant took the stand and denied ever sexually abusing L. or S. Several witnesses, including Polly, offered testimony to establish alibis for dates listed in the indictments when defendant had allegedly

abused L. and S. Several people also testified to defendant's good character in the community.

At the close of the evidence, the jury found defendant guilty of all charges. The trial court sentenced defendant to two consecutive life sentences. Defendant appeals.

*Attorney General Michael F. Easley, by Investigative Law Clerk/Attorney Sondra C. Panico, for the State.*

*Steven F. Bryant for defendant-appellant.*

EAGLES, Judge.

## I.

[1] Defendant first argues that the trial court violated Rule 404(b) by admitting the testimony of the State's witnesses Kathy (Susie) Barnes, Vickie Brewer Wright, and Patricia A. Bryant. G.S. 8C-1, Rule 404(b) provides in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

Rule 404(b) is a rule of inclusion of relevant evidence of prior bad acts unless the only reason the evidence is offered is to show the defendant's propensity to commit a crime like the act charged. *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990); *State v. Matheson*, 110 N.C. App. 577, 581, 430 S.E.2d 429, 431 (1993); *State v. Faircloth*, 99 N.C. App. 685, 689, 394 S.E.2d 198, 201 (1990). Here, the State argues that the three witnesses' testimony was admissible to demonstrate a common plan or scheme by defendant to sexually abuse adolescent female family members.

One of the three witnesses whose testimony was offered to show a common plan was Kathy (Susie) Barnes (hereinafter Susie), one of Polly's daughters and the stepmother of L. and S. The State's evidence tended to show that Susie first remembered seeing defendant when she was approximately four years old (approximately 1964) after defendant married her mother. When Susie was sixteen, defendant remarked that he could not wait until she fully developed. After she

STATE v. FRAZIER

[121 N.C. App. 1 (1995)]

began "filling out," defendant started "feeling" Susie around her waist, breasts, buttocks, and vagina. Though Susie was still in the fifth grade when she turned sixteen, she quit school. Thereafter, she was often alone with defendant while her mother, Polly, worked. On occasion after Susie quit school, defendant kissed Susie "[i]n the mouth [and] on the face." Susie lived with an aunt for a year while defendant and Polly traveled with defendant's company. Defendant and Polly returned when Susie was seventeen and defendant resumed touching her inappropriately. He told her that "[h]e just wanted to be [her] boyfriend if [she] wanted him to."

Susie married her first husband when she was twenty and lived with him until she was twenty-one. Their son was born shortly after she separated from her husband. Susie had no money so she lived with defendant and Polly in Florida until 1983. During this time, defendant told Susie "[h]e would like to f— [her]." In 1983 or 1984 after Susie married her second husband, the father of L. and S., defendant paid a substantial portion of their expenses. In return for his financial contributions, defendant said Susie needed to show him "some affection" or he would take her son away from her. Susie, her husband, and L. and S. lived in a trailer near defendant and Polly's trailer. Eventually, defendant had sexual intercourse with Susie in the back bedroom of his trailer while her husband was at work, her children were at school, and her mother was gone. Defendant threatened to have Susie's stepdaughters sent away and raise her son himself if she told anyone.

Patricia A. Bryant (hereinafter Patricia), Susie's sister and Polly's other daughter, also testified for the State. She stated that defendant often intervened on her behalf when her mother would start to whip or beat her. As she got older, defendant began kissing her on the mouth instead of on the cheek. Patricia testified that on one evening when she was twelve or had just turned thirteen (approximately 1966), defendant got into the shower as she was taking her shower and began caressing her. He then placed her arms on the wall, lifted her leg, and had sex with her in the shower. Patricia had previously been sexually abused by her grandfather who had always told her to be submissive, so she was completely submissive with defendant. Defendant made it clear to Patricia that if she told anyone, he would not protect her from her mother anymore. Patricia eventually attempted to commit suicide. When Patricia awoke in the hospital, her mother, Polly, told her that if she revealed the abuse to anyone, she would send her away to an insane asylum. Thereafter, Patricia

stayed away from defendant and spent a lot of nights with her brother Larry and his wife, Vickie Brewer Wright (hereinafter Vickie).

Vickie was the third witness whose testimony was offered to show a common plan by defendant to sexually abuse adolescent female family members. She was twelve when she first met the defendant. In 1964 when she was fourteen, she married defendant's sixteen-year-old son, Larry Frazier. While the couple were newly-weds, they lived with defendant and Polly. Vickie testified that she looked up to defendant because he took care of her and Larry financially. She also stated that defendant had a "hold over [her]" because he showed her the attention that her husband and father never did. Approximately one week before her first child was born, she and Larry moved in with defendant's sister for a short time. Vickie and Larry then moved into their own home. Defendant began stopping by every evening to see how the baby was. Vickie testified that one day when she was fifteen and her husband was at work, defendant led her into the bedroom and had sexual intercourse with her. After Larry began working third shift, defendant dropped by Vickie's house "a lot of mornings" between five and six and he would have sexual intercourse with her. Vickie testified that she did not want for it to happen, but that she "was too young and afraid to say anything about it." This conduct continued for approximately two years until Vickie finally confided in Patricia.

"North Carolina courts have been consistently liberal in admitting evidence of similar sex offenses in trials on sexual crime charges." *State v. Jacob*, 113 N.C. App. 605, 608, 439 S.E.2d 812, 813 (1994), *citing State v. McCarty*, 326 N.C. 782, 785, 392 S.E.2d 359, 361 (1990). To be admissible as showing a common plan, the evidence of prior conduct must be similar and not too remote in time. *State v. Jones*, 322 N.C. 585, 589, 369 S.E.2d 822, 824 (1988), *appeal dismissed and disc. review denied*, 328 N.C. 95, 402 S.E.2d 423 (1991).

Defendant first argues that the testimony by Susie and Vickie should not have been admitted because it was not sufficiently similar to the conduct for which defendant stood trial. A prior act or crime is "similar" if it " 'tend[s] to support a *reasonable* inference that the same person committed both the earlier and later acts.' " *State v. Sneeden*, 108 N.C. App. 506, 510, 424 S.E.2d 449, 451 (1993) (quoting *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991)), *aff'd*, 336 N.C. 482, 444 S.E.2d 218 (1994). In *Sneeden*, 108 N.C. App. at 510, 424 S.E.2d at 451, this Court found that a 1967 prior act by defendant

was sufficiently similar to the 1990 charged act where in both instances, "defendant gained the trust of his victims, lured them into an automobile and then took them to a different location where they were sexually assaulted." Here, all five females testified that defendant looked after them when they were young and began his misconduct by touching them and fondling them. Defendant began to touch them more invasively as they grew older. Defendant had sexual intercourse with all but one of them. Defendant convinced each of them to remain quiet about the abuse by threatening to send them away or by threatening to stop taking care of their financial needs. Based on *Sneeden*, we conclude the evidence of prior acts of sexual abuse by defendant was sufficiently similar to the acts described by L. and S. to be admissible at trial. All of the witnesses testified to similar forms of abuse which demonstrated a distinct pattern over a protracted period. While Susie's testimony that defendant forced her to have sex with him when she was twenty-four did not precisely parallel the testimony of the other witnesses, we hold that the conduct was not so dissimilar as to render it not part of defendant's pattern of sexual conduct with youthful female family members.

Defendant also argues that the testimony of Susie, Vickie, and Patricia was too remote in time to be admissible. In making this argument, defendant relies on *State v. Jones*, 322 N.C. 585, 369 S.E.2d 822 (1988), a case involving alleged sexual abuse by a man against his stepdaughter. In *Jones*, the court held that the testimony of a female who stated she had previously been subjected to similar sexual abuse by the defendant was inadmissible because the prior sexual abuse had occurred seven years earlier and was too remote in time. *Jones*, 322 N.C. at 591, 369 S.E.2d at 825. *Jones* does not control here.

Since *Jones*, our courts have permitted testimony of prior acts of sexual misconduct which occurred greater than seven years earlier. In *State v. Shamsid-Deen*, 324 N.C. 437, 379 S.E.2d 842 (1989), our Supreme Court held it was not error for the trial court to admit the testimony of sisters of the victim where the sisters testified that their father had also sexually abused them. There, the defendants' prior sexual misconduct with the sisters occurred during a twenty year period. *Shamsid-Deen*, 324 N.C. at 447, 379 S.E.2d at 848.

Here, the testimony offered by Susie, Patricia, and Vickie showed that defendant's prior acts of sexual abuse occurred over a period of approximately twenty six years.

STATE v. FRAZIER

[121 N.C. App. 1 (1995)]

While a lapse of time between instances of sexual misconduct slowly erodes the commonality between acts and makes the probability of an ongoing plan more tenuous, the continuous execution of similar acts throughout a period of time has the opposite effect. When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan.

*State v. McKinney*, 110 N.C. App. 365, 372, 430 S.E.2d 300, 304 (quoting *State v. Shamsid-Deen*, 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989)), *appeal dismissed, cert. denied and disc. review denied*, 334 N.C. 437, 433 S.E.2d 182 (1993) (citation omitted). When there is a period of time during which there is no evidence of sexual abuse, the lapse does not require exclusion of the evidence if the defendant did not have access to the victims during the lapse. *State v. Jacob*, 113 N.C. App. 605, 611, 439 S.E.2d 812, 815 (1994); *State v. Davis*, 101 N.C. App. 12, 20, 398 S.E.2d 645, 650 (1990).

Here, the evidence showed that defendant sexually abused Patricia in 1966 and Vickie from 1966 to 1968. From 1968 until 1976, there was no evidence of sexual abuse by defendant, but the evidence showed that defendant did not have access to Patricia and Vickie during that time. In 1976 when Susie was sixteen, defendant began sexually abusing her; the evidence showed that defendant's sexual abuse of Susie continued until 1985 except when defendant did not have access to her. Four years later, defendant began sexually abusing L., one of the two minor victims in this case. Based on *Jacob*, we conclude the eight year lapse did not render the witnesses' testimony too remote to be admissible. Accordingly, this assignment of error fails.

II.

[2] Defendant also argues that the trial court erred by allowing the State to cross-examine defendant because the questions were prejudicial. Specifically, defendant argues he was prejudiced by the prior bad acts testimony because he was required to defend against those allegations in addition to the pending charges. In making this argument, defendant relies on *State v. Bailey*, 80 N.C. App. 678, 343 S.E.2d 434, *disc. review allowed*, 317 N.C. 336, 346 S.E.2d 503, *disc. review dismissed as improvidently granted*, 318 N.C. 652, 350 S.E.2d 94 (1986), a case where the defendant was accused of sexually abusing and attempting to rape a woman. On cross-examination, the prosecution asked the defendant if he had not previously attempted to rape another woman. *Bailey*, 80 N.C. App. at 680, 343 S.E.2d at 436. The

cross-examination questions were designed to rebut the defendant's defense of consent. We held that this cross-examination was improper under Rule 404(b) because evidence of other non-consensual sexual activity was not relevant to the issue of the victim's consent. Defendant's reliance on *Bailey* is misplaced because here defendant's prior misconduct was not admitted on the issue of consent.

However, the trial court erred in allowing the State to cross-examine defendant about alleged prior acts of sexual misconduct. Rule 608(b) of the North Carolina Rules of Evidence provides that a witness may not be cross-examined about specific instances of misconduct unless the instances are probative of the witness's character for truthfulness or untruthfulness. G.S. 8C-1, Rule 608(b). Instances of sexual misconduct are not probative of a witness's character for truthfulness or untruthfulness. *State v. Gordon*, 316 N.C. 497, 506, 342 S.E.2d 509, 514 (1986); *State v. Morgan*, 315 N.C. 626, 635, 340 S.E.2d 84, 90 (1986); *State v. Moore*, 103 N.C. App. 87, 99, 404 S.E.2d 695, 702, *disc. review denied*, 330 N.C. 122, 409 S.E.2d 607 (1991). Here, defendant testified and denied he had ever sexually abused any of the witnesses. The State then cross-examined defendant about his prior acts of sexual misconduct. While it was error for the trial court to allow this cross-examination, the error does not require us to grant defendant a new trial because "there is no 'reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial.'" *Gordon*, 316 N.C. at 506, 342 S.E.2d at 514, *quoting* G.S. 15A-1443(a). As in *Moore*, 103 N.C. App. at 99, 404 S.E.2d at 702, where we held the error did not require a new trial, here evidence of defendant's alleged prior acts of sexual misconduct had already been admitted through the testimony of Susie, Vickie, and Patricia. Accordingly, "any cross-examination of defendant concerning [these prior acts] was merely cumulative." *Id.*

[3] Defendant also argues that he was prejudiced by the State's cross-examination questions concerning his wife, Polly. Specifically, defendant argues he was prejudiced when the State asked about (1) Polly threatening to hurt Vickie if defendant had sexual intercourse with Vickie again; (2) Polly trying to show defendant the breasts of a pregnant woman; and (3) Polly fondling a child's penis. This cross-examination was irrelevant and should have been excluded. Defendant argues he is entitled to a new trial based on our Supreme Court's decision in *State v. Kimbrell*, 320 N.C. 762, 360 S.E.2d 691 (1987). In *Kimbrell*, 320 N.C. at 769, 360 S.E.2d at 694-95, our

Supreme Court found cross-examination by the State about defendant's "devil worshipping" had little or no probative value in the case, was error, and required defendant to receive a new trial. Defendant's reliance on *Kimbrell* is misplaced. Here, the improper questions related to Polly's actions rather than defendant's actions. Defendant has failed to show that absent this error, the outcome of his trial would have been different. Accordingly, we conclude defendant is not entitled to a new trial based on the trial court's error.

### III.

[4] Defendant next argues that the trial court erred by allowing improper and prejudicial cross-examination of two defense witnesses. Defendant first objects to the State's questioning Polly about fondling her grandson's penis and attempting to show defendant a pregnant woman's breast. Defendant also argues that the trial court erred in allowing the State to question Polly about a photograph defendant took of Polly and defendant having sexual intercourse which Polly allegedly showed to S. Defendant further argues that the trial court should not have allowed the State to ask Polly whether she had previously had sexual relations with her son-in-law and whether she called Patricia a whore when she was a child. While it was error pursuant to Rule 608(b) for the trial court to allow the State to cross-examine Polly about specific instances of sexual misconduct because they were not probative of Polly's veracity, the error does not require a new trial. The testimony did not prejudice defendant's case because, as we indicated above, the questions related to Polly's conduct rather than defendant's actions. After reviewing the record, we conclude there is not a reasonable possibility that, absent the error, the outcome of the trial would have been different.

[5] Defendant also argues the trial court erred in allowing the State to cross-examine Polly about whether she had attempted to get L. and S. to change their stories. Rule 608(b) allows a witness to be cross-examined about specific instances of conduct if they are probative of the witness's veracity. Our Supreme Court has previously stated that conduct which is probative of veracity includes "attempting to corrupt or cheat others . . . and attempting to deceive or defraud others." *State v. Morgan*, 315 N.C. at 635, 340 S.E.2d at 90. Based on the guidance supplied by *Morgan*, we conclude the cross-examination by the State about L. and S. fits within the type of questioning allowed by the Rules of Evidence; the trial court did not err in allowing it.

**[6]** Defendant also argues it was improper to allow the State to ask defense witness Barbara Jean Frazier (hereinafter Barbara Jean), over objection, if she, defendant, and defendant's wife would "do anything in this case to get a verdict of not guilty." Barbara Jean is the wife of Polly's son, John Billy Frazier, Jr. Rule 611(b) of the North Carolina Rules of Evidence provides that the scope of cross-examination is extremely broad: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." G.S. 8C-1, Rule 611(b). We conclude the State's questioning here was probative on the issue of Barbara Jean's credibility as a witness. Accordingly, the trial court did not err in allowing this cross-examination.

**[7]** Defendant also argues that the State impeached Polly's testimony that she never attempted to show Marsha Frazier's (hereinafter Marsha) breasts to defendant by questioning Marsha about this event. Marsha had previously been married to John Billy Frazier, Jr. Pursuant to Rule 608(b) of the North Carolina Rules of Evidence, it was improper for the State to use extrinsic evidence (Marsha's testimony) to attack Polly's denial that she never attempted to show Marsha's breasts to defendant.

Defendant argues that the trial court's error requires a new trial, as our Supreme Court required in *State v. Williams*, 322 N.C. 452, 368 S.E.2d 624 (1988). There, the victim accused the defendant of raping her, but the defendant insisted that he was innocent. *Williams*, 322 N.C. at 453, 368 S.E.2d at 625. The defendant's brother-in-law testified on defendant's behalf. On cross-examination, the brother-in-law denied that the defendant had ever told him that he had sex with the victim on the night of the alleged rape. *Id.* The State then called two rebuttal witnesses who testified that the brother-in-law had told them that the defendant admitted raping the victim. *Id.* at 454, 368 S.E.2d at 625-26. Our Supreme Court stated that the "question of defendant's guilt hing[ed] solely upon whether the jury believed his testimony or the prosecutrix's testimony." *Id.* at 457, 368 S.E.2d at 627. The court concluded in *Williams* that if the testimony had not been erroneously admitted, there was a reasonable possibility that the outcome of the trial might have been different and awarded the defendant a new trial. *Id.*

Here, Marsha was a rebuttal witness to challenge the truthfulness of Polly's testimony—not defendant's testimony. The erroneously admitted evidence pertained to a collateral matter. Therefore, we

conclude that the admission of this testimony did not prejudice defendant because there is no reasonable possibility that its exclusion would have changed the outcome of this case.

Defendant further argues that the trial court improperly allowed the State on rebuttal to impeach the testimony of Barbara Jean by asking Marsha whether Barbara Jean had ever called Social Services to report anyone in the family for sexual abuse or neglect. After reviewing the record, we conclude there was no error. Even if admission of this testimony was error, defendant has not shown how it prejudiced him. *See* G.S. 15A-1443(a) (stating that "[t]he burden of showing . . . prejudice [requiring a new trial] . . . is upon the defendant").

IV.

**[8]** Defendant next argues that the trial court erred by allowing improper comments, conduct, and arguments by the prosecutor. Generally, "arguments of counsel are within the domain of the trial [court's] discretion." *State v. Brooks*, 113 N.C. App. 451, 458, 439 S.E.2d 234, 238 (1994). Although the State is obligated to assure that a defendant is given a fair trial, "counsel is given wide latitude in the argument of hotly contested trials." *State v. Barfield*, 298 N.C. 306, 331, 259 S.E.2d 510, 531 (1979), *cert. denied*, 448 U.S. 907, 65 L.Ed.2d 1137 (1980).

This was a hotly contested sexual abuse case. It is clear that the prosecutor became argumentative at times by, *inter alia*, accusing witnesses of not being truthful on the witness stand, questioning Polly's morals, and calling defendant a "monster." However, at trial, no objection was made to several of the prosecutor's comments of which defendant now complains. When no objection is made regarding inappropriate argument by the prosecutor during trial, a new trial is not merited unless the argument " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *State v. McCollum*, 334 N.C. 208, 224, 433 S.E.2d 144, 152 (1993), *cert. denied*, —— U.S. ——, 129 L.Ed.2d 895 (1994) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L.Ed.2d 144, 157 (1986)). After reviewing the prosecutor's comments here to which defendant made no objection, we conclude the prosecutor's arguments were not so prejudicial as to meet the *McCollum* standard.

As for the prosecutor's other inappropriate comments, defendant relies on *State v. Brooks*, 113 N.C. App. 451, 439 S.E.2d 234 (1994), to argue for a new trial. In *Brooks*, the defendant was on trial for mur-

dering his stepdaughter's boyfriend. *Brooks*, 113 N.C. App. at 452-53, 439 S.E.2d at 235-36. During argument to the jury, the prosecutor characterized the defendant as a " 'liquor-drinking, dope-smoking, defendant.' " *Brooks*, 113 N.C. App. at 458, 439 S.E.2d at 238. The prosecutor also commented on defendant's past abusive behavior toward his wife. *Id.* Because the prosecutor's comments were unrelated to the defendant's murder charge, we concluded that the comments were "calculated to prejudice and to inflame the jury." *Id.* at 458, 439 S.E.2d at 238. Accordingly, we held that defendant Brooks was entitled to a new trial. *Id.* at 459, 439 S.E.2d at 239.

*Brooks* is distinguishable from this case because in *Brooks*, the trial court failed to sustain an objection to the inappropriate comments of the prosecutor. *Id.* at 459, 439 S.E.2d at 238-39. Here, the trial court sustained defendant's objections to the majority of the prosecutor's other inappropriate statements. In particular, after the prosecutor referred to defendant and Polly as "[j]ust as evil and just as sorry and just as mean as two despicable people could ever be on this earth," it appears that the trial court sustained defendant's objection. While defendant did not move to strike the prosecutor's statement, it is clear that by sustaining defendant's objection, the trial court indicated its disapproval of the prosecutor's comment. We conclude the prosecutor's comment regarding defendant and Polly does not merit a new trial for defendant. Furthermore, after carefully reviewing the pertinent portions of the trial transcript, we conclude that none of the prosecutor's inappropriate comments were so prejudicial as to merit a new trial for defendant. This assignment of error fails.

## V.

[9] Defendant also argues that the trial court erred by denying his motions for a mistrial. The trial court has wide discretion in controlling the conduct of counsel during trial. *State v. Davis*, 80 N.C. App. 143, 147, 341 S.E.2d 101, 103 (1986). G.S. 15A-1061 provides that the trial court may declare a mistrial when conduct occurs which results in "substantial and irreparable prejudice to the defendant's case." Here, the prosecutor remarked that a man and woman were making noises as witnesses testified. The trial court then excused the jury and out of the jury's presence warned everyone in the courtroom to refrain from making noises. Defendant's counsel made a motion for mistrial, arguing that the prosecutor's actions prejudiced the defendant. The trial court admonished the prosecutor, denied the motion for

mistrial, and the jury returned. On this record, we conclude defendant sustained no "substantial and irreparable prejudice" as a result of the prosecutor's comment.

Defendant's counsel also moved for a mistrial after the prosecutor asked Polly about a meeting with defendant's counsel. In *Barfield*, 298 N.C. at 333-34, 259 S.E.2d at 532, the defendant argued she was prejudiced after the prosecutor asked an improper question of a witness. Our Supreme Court concluded that the defendant was not prejudiced because the defendant's counsel made a timely objection and the witness did not respond to the question. *Barfield*, 298 N.C. at 334, 259 S.E.2d at 532. Here, defendant's counsel objected immediately after the prosecutor asked his question, Polly did not respond to the question, and the trial court sustained the objection. Accordingly, this assignment of error fails.

## VI.

[10] Finally, defendant argues the trial court erred by denying defendant's motion to dismiss because there was a fatal variance between the dates of abuse alleged in the indictments and the evidence presented at trial. Defendant's argument fails. In child sexual abuse cases, specificity regarding dates diminishes. *State v. Burton*, 114 N.C. App. 610, 613, 442 S.E.2d 384, 386 (1994). In *State v. Everett*, 328 N.C. 72, 399 S.E.2d 305 (1991), our Supreme Court stated:

> We have stated repeatedly that in the interests of justice and recognizing that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence.

*Everett*, 328 N.C. at 75, 399 S.E.2d at 306, *quoting State v. Wood*, 311 N.C. 739, 742, 319 S.E.2d 247, 249 (1984). Here, defendant argues that his reliance on an alibi defense made the dates crucial. However, the record shows that defendant did not rely solely on an alibi defense. Defendant also denied that he had ever sexually abused the victims; defendant and several of his witnesses testified that the victims fabricated the stories of abuse. Furthermore, our Supreme Court has stated that a defendant is not prejudiced when the State has "placed [the] defendant on notice that the victim [is] a child and therefore the information provided [relating to dates and times] should not be relied upon for any degree of certainty." *State v. Effler*, 309 N.C. 742, 750, 309 S.E.2d 203, 207-08 (1983). Here, the indictments alleged that

STATE v. FRAZIER

[121 N.C. App. 1 (1995)]

defendant's sexual misconduct occurred "on or about" certain dates. In addition, the State argued that the dates alleged in the indictments were not precise because the victims could not be expected to remember precisely every date on which the multiple instances of sexual abuse occurred. We conclude the State took adequate measures to put defendant on notice that the dates alleged should not be relied upon for any degree of certainty.

After careful review of the entire record, we conclude that defendant received a fair trial free of prejudicial error.

No prejudicial error.

Judge LEWIS concurs.

Judge JOHN dissents.

Judge JOHN dissenting.

I respectfully dissent and vote to award defendant a new trial based upon the reasons which follow.

First, the majority holds the trial court erred "in allowing the State to cross-examine defendant about alleged prior acts of sexual misconduct" and concerning alleged misconduct of his wife, in allowing "the State to cross-examine [defendant's wife] about specific instances of [her] sexual misconduct," and in permitting "the State to use extrinsic evidence" to attack the denial by defendant's wife of sexual misconduct. It also characterizes certain statements of the prosecutor to the jury as "inappropriate" and "argumentative." However, the majority excuses as not requiring a new trial each of the foregoing prosecutorial transgressions tolerated by the trial court. I disagree and would hold that, even assuming arguendo defendant has not shown that the prejudicial effect of any one particular error is such as to merit a new trial, see N.C. Gen. Stat. § 15A-1443(a) (1988), the prejudicial impact of these errors considered in combination or in toto is such that defendant must receive a new trial. See State v. White, 331 N.C. 604, 616, 419 S.E.2d 557, 564 (1992) (cumulative effect of erroneously admitted evidence "deprived defendant of his fundamental right to a fair trial").

Second, I believe the evidence of defendant's alleged prior sexual misconduct should have been excluded and that its admission, especially in light of the errors found by the majority, constituted prejudi-

cial error requiring a new trial. Under N.C. Gen. Stat. § 8C-1, Rule 404(b) (1992), evidence of prior offenses by a defendant is "inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged . . . ." State v. Young, 317 N.C. 396, 412, 346 S.E.2d 626, 635 (1986).

The majority relies primarily on State v. Shamsid-Deen, 324 N.C. 437, 379 S.E.2d 842 (1989), in approving the testimony of Susie Barnes, Patricia Bryant, and Vickie Wright as indicative of a common scheme or plan of defendant. In Shamsid-Deen, the defendant was charged with the August 1983 rape of his approximately twenty year-old daughter. He objected to testimony that he began having intercourse with her about once a week when she was nine and almost daily as she grew older. The Court observed these acts

> formed a distinct pattern of forced sexual intercourse over an eleven-year period, saving only the hiatus from April 1983 to August 1983.

Id. at 445, 379 S.E.2d at 847. As the majority points out, the Court emphasized that "a lapse of time between instances of sexual misconduct" makes the "probability of an ongoing plan more tenuous," while similar acts "performed continuously over a period of years" serve to demonstrate "the existence of a plan." Id. (emphasis added).

Regarding testimony by two other daughters of the defendant, the Shamsid-Deen court noted these women had also been molested by their father as they reached puberty and continuously into their adult lives, Id. at 447, 379 S.E.2d at 848, logically a period spanning about ten years. Since the defendant's daughters were relatively close in age—twenty, twenty-seven, and twenty-nine at trial—the abuse of each must therefore have occurred in close temporal proximity to that of the others, thus reinforcing the Court's emphasis on the constant nature of "defendant's pattern of forcing his daughters to submit to intercourse as they reached puberty and continuing to assault them . . . into their adulthood . . . ." Id. (emphasis added).

In the case sub judice, the earliest conduct "upon which this appeal is based," State v. Jones, 322 N.C. 585, 590, 369 S.E.2d 822, 824 (1988), was alleged to have occurred on 12 March 1990 (in case 92 CRS 2831 charging the first degree rape of L.). Susie Barnes testified about occasional sexual touching and comments by defendant in the period when she was sixteen into her early twenties, as well as about

intercourse with defendant at age twenty-four in 1983. Thus, defendant's last abusive contact with Barnes occurred approximately seven years before the first alleged offense *sub judice*.

Patricia Bryant testified that after "several months" of touching her inappropriately, defendant raped her when she "had either already [become] thirteen or was just between twelve and thirteen." Born in 1953, Bryant would have been thirteen in 1966. The rape therefore occurred twenty-four years prior to the earliest alleged current offense.

Vickie Wright testified she had sexual intercourse with defendant "maybe once a month, every two months" for approximately two years, from 1966 to 1968, when she was fifteen to seventeen years-old. Thus, the incidents involving Wright and defendant concluded twenty-two years prior to the earliest conduct upon which defendant was brought to trial.

In *Jones*, 322 N.C. 585, 369 S.E.2d 822, our Supreme Court held that prior acts of sexual abuse which occurred seven years before the incidents involved in the case before the Court were too remote to be allowed into evidence as part of a common plan or scheme. The Court reasoned:

> the passage of time between the commission of the two acts slowly erodes the commonality between them. The probability of an ongoing plan or scheme then becomes tenuous. Admission of other crimes at that point allows the jury to convict defendant because of the kind of person he is, rather than because the evidence discloses, beyond a reasonable doubt, that he committed the offense charged.

*Id.* at 590, 369 S.E.2d at 824.

The *Jones* court cited the earlier decision of *State v. Shane*, 304 N.C. 643, 285 S.E.2d 813 (1982), which found erroneous admission of evidence concerning acts committed but seven months prior to the crimes before the Court. The *Shane* court stated:

> it is evident that the period of time elapsing between the separate sexual events plays an important part in [the] balancing process, especially when the State offers the evidence of like misconduct to show the existence of a common plan or design for defendant's perpetration of this sort of crime.

*Id.* at 655, 285 S.E.2d at 820.

Also instructive is *State v. Gross*, 104 N.C. App. 97, 408 S.E.2d 531, *disc. review denied*, 330 N.C. 444, 412 S.E.2d 78 (1991), in which this Court found error in the admission of evidence the defendant had sexually assaulted an individual, Michael Reep, approximately seven years before the crimes alleged in the case before the Court. We held that:

> [t]he passage of time between the alleged assaults upon Mr. Reep and those against the victims here is so great as to make the existence of any plan or scheme tenuous at best.

*Id.* at 103, 408 S.E.2d at 534.

The majority accurately points to our Supreme Court's characterization of itself as "markedly liberal" in admitting evidence of "prior, similar sex offenses by a defendant." *See State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). However, that same Court has proclaimed:

> The period of seven years "substantially negate[s] the plausibility of the existence of an ongoing and continuous plan to engage persistently in such deviant activities." As such, the reasoning that gave birth to Rule 404(b) exceptions is lost.

*Jones*, 322 N.C. at 590, 369 S.E.2d at 824 (citation omitted).

The *Jones* court's pronouncement is precisely on point with regards to the testimony of Barnes, involving an identical interval of seven years between incidents. I respectfully submit the Court's decree also most assuredly precludes admission of evidence, as part of a common scheme or plan, of incidents separated from the instant charges by periods of *twenty-two* and *twenty-four* years.

In justifying such incidents as not being excessively remote, the majority also relies on cases in which this Court has found the length of an interval between incidents less significant when defendant had no access to the victims because, for example, defendant was incarcerated. *See State v. Jacob*, 113 N.C. App. 605, 439 S.E.2d 812 (1994); *State v. Davis*, 101 N.C. App. 12, 398 S.E.2d 645 (1990), *appeal dismissed*, 328 N.C. 574, 403 S.E.2d 516 (1991). I suggest that access to potential victims and the absence of evidence of abuse would, by means of converse analogy, weigh against the element of commonality. Unlike the majority, I believe the record demonstrates significant

STATE v. FRAZIER

[121 N.C. App. 1 (1995)]

periods of time during which defendant had "access" to Barnes, Bryant, and Wright and during which there was no evidence of abuse.

For example, the majority concedes the record contains no evidence of sexual abuse by defendant between 1968 and 1976, but asserts "the evidence showed that defendant did not have access to Patricia [Bryant] and Vickie [Wright] during that time." To the contrary, the record reveals that after defendant ceased having intercourse with Wright in 1968, she continued to live near him until 1972 when she separated from his son. Further, although the record suggests Bryant attempted to avoid defendant after he abused her in 1966, she did continue to spend time in his home. Finally, the record reflects that Barnes lived near defendant in a trailer owned by him from approximately 1983 until 1993. Nonetheless, the rape of Barnes was described as occurring in 1983 and no other evidence of similar conduct towards Barnes by defendant was introduced. The necessary element of commonality regarding Barnes' testimony is thus further negated. See Jacobs, 113 N.C. App. at 611, 439 S.E.2d at 815 (Where defendant had "almost no access" to victims of earlier conduct following divorce, the Court noted, "[t]he remoteness factor must be examined carefully to determine whether the plan or scheme of molestation was interrupted or ceased due to underlying circumstances, and then resumed in a continual fashion.").

In sum, I believe the evidence of incidents allegedly involving defendant and Barnes, Bryant and Wright was too remote and that "its probative impact [was] so attenuated by time that it [became] little more than character evidence illustrating the predisposition of the accused." Jones, 322 N.C. at 590, 369 S.E.2d at 825. It therefore was not admissible under Rule 404(b) to demonstrate a common scheme or plan of defendant. Moreover, the extensive lapse of time between each incident and those for which defendant was on trial created the substantial likelihood "of unfair prejudice, confusion of the issues, or misleading the jury," N.C. Gen. Stat. § 8C-1, Rule 403 (1992), so as at a minimum to necessitate exclusion of the evidence under Rule 403.

Finally, the prejudicial effect of Bryant's testimony regarding defendant was amplified by her also being allowed to relate over his objection that, before ever meeting defendant, she had been sexually molested by her grandmother's common-law husband and by her mother's live-in boyfriend. Bryant testified graphically about this abuse, including recounting an instance of being sodomized while pinned in a stand used to milk goats. These incidents, while indis-

putably reprehensible and traumatic to Bryant, were irrelevant to the charges against defendant and should have been excluded. *See State v. Coen,* 78 N.C.App. 778, 780-781, 338 S.E.2d 784, 786, *appeal dismissed,* 317 N.C. 709, 347 S.E.2d 444 (1986) ("If the proffered evidence has no tendency to prove a fact in issue in the case, the evidence is irrelevant and must be excluded."). Even assuming *arguendo* this testimony met the test of relevance, it should have been excluded under N.C. Gen. Stat. § 8C-1, Rule 403 (1992) in view of the great potential for prejudice. *See State v. Hamilton,* 77 N.C.App. 506, 335 S.E.2d 506 (1985), *disc. review denied,* 315 N.C. 593, 341 S.E.2d 33 (1986) (relevant evidence may be excluded if probative value substantially outweighed by inflammatory effect).