STATE OF NORTH CAROLINA v. GRADY MORRIS MATHESON

No. 9330SC58

(Filed 15 June 1993)

**Evidence and Witness § 373 (NCI4th)— second degree rape of stepdaughter—rape of other stepdaughter ten years earlier— relevancy—remoteness—admissibility to show common plan or scheme**

In a prosecution of defendant for second degree rape of his stepdaughter, testimony by another stepdaughter concerning earlier rapes committed by defendant against her was admissible, since the testimony was substantially similar to that of the victim in this case and was therefore relevant to show a common plan or scheme on the part of defendant to sexually assault his stepdaughters; furthermore, the acts to which the witness testified were not so remote in time as to make the testimony unfairly prejudicial where the evidence showed that defendant continuously assaulted the witness weekly from 1979 to 1981 and the victim weekly from 1984 to 1991 with the only break being the time he was incarcerated. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Rape § 73.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

**Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offense. 88 ALR3d 8.**

Appeal by defendant from judgments entered 23 September 1992 by Judge Robert D. Lewis in Clay County Superior Court. Heard in the Court of Appeals 7 June 1993.

Defendant was charged with two counts of second degree rape in violation of N.C. Gen. Stat. § 14-27.3. Evidence was presented at trial as follows:

George Heilner, a psychologist with the Smoky Mountain Center, testified that he had conducted various intelligence tests on the victim. He further testified that the victim scored seventy-five

on her IQ test, statistically below the average range of intellectual functioning. He also testified that tests indicated the victim was not a "significant risk for confabulating fantasy."

The victim testified that she was twenty-one years old at the time of the trial and had been defendant's stepdaughter since she was thirteen. On 23 February 1991, the victim was sleeping on a couch when defendant came home. The victim slept on the couch because she had told her mother that defendant molested her and her mother instructed her to sleep there. The victim also was sleeping in jeans and a shirt due to her fear of defendant. Defendant sat down on a chair in the living room wearing only a shirt and underwear. Defendant then "scooted" behind the victim on the couch and put his right hand up her shirt and bra. The victim tried to move defendant's hand away from her breasts, but she was unable to do so. Defendant put his right hand down the victim's pants and panties and put his finger in her vagina. The victim was unable to move defendant's hand. Defendant pulled the victim's pants down to her knees and using his right hand, placed his penis into her vagina. Defendant pulled his penis out of the victim's vagina, used his right hand to ejaculate, and then went to the bathroom. Although the victim's mother was close by, the victim did not call out or yell because she was afraid that defendant would hurt her. Later that evening, the victim told her mother about the incident in the presence of her sister.

On 9 May 1991, the victim was at home alone with defendant. Defendant grabbed the victim by her left hand and took her to her mother's room. The victim struggled to get away, but she was unable to do so. Defendant forced the victim onto the bed and put his right hand up into her shirt and bra. Defendant told the victim that he loved her and pulled her shirt and bra off. Defendant laid on his side and forced the victim to lie on her side while he inserted his finger into her vagina. Defendant pushed the victim's pants and panties down to her knees. He took off his pants, climbed on top of the victim, and used his right hand to insert his penis into her vagina. He then ejaculated with his right hand and left to go to the bathroom.

The victim further testified that incidents similar to the 23 February 1991 and 9 May 1991 incidents happened two or three times a week since she was thirteen years old. Defendant otherwise treated the victim as a daughter; however, he would not allow

STATE v. MATHESON

[110 N.C. App. 577 (1993)]

the victim to go out on dates. The victim did not report the incidents until 1991 because defendant had threatened to kill her if she told anyone.

Dewana Deshaies testified that she was the victim's sister. She further testified that defendant was very protective of the victim and would not let her go out on dates. In February 1991, the victim told Deshaies that defendant had been sleeping with her. Deshaies then told the victim's mother about defendant's sexual activity with the victim. In May 1991, the victim's mother called Deshaies wanting to know where the victim was. The next day Deshaies began looking for the victim and eventually picked her up at the Huddle House in Blairsville. The victim was crying hysterically, and Deshaies took her to the sheriff's station. At the station, Deshaies wrote down the victim's statement concerning the incident of 9 May 1991.

Tina Lyons testified that she was the manager of the Hardee's where the victim worked. In mid-February 1991, the victim came to work noticeably upset. She told Lyons that her stepfather had raped her. In May 1991, the victim telephoned Lyons after the 9 May 1991 incident.

Caroline Sibley testified that in 1979 she lived in Colorado with her mother, brother, and defendant, who was her stepfather. She routinely slept with her clothes on so that it was more difficult for defendant to get to her. On one specific occasion in 1979, Sibley awoke to find defendant in her bedroom. Defendant pulled Sibley's pants down and put his penis into her vagina from behind her. When defendant was done, he pulled his penis out and ejaculated on the bed.

Sibley further testified that on another occasion in 1979 or later she was left at home alone with defendant. Defendant locked the door and led Sibley to a bedroom despite her objections. Defendant laid Sibley on the bed, pulled off her pants, pulled down his pants, and got on top of her. Defendant then put his penis into Sibley's vagina. After he was done, defendant pulled out his penis and ejaculated.

Sibley testified that the last time she could remember defendant forcing her to have sexual intercourse was sometime in 1981. Between 1979 and 1981, similar incidents occurred "two or three times a day, sometimes every day, at least every other day." Sibley

never discussed her relationship to defendant with the victim, and the victim never discussed her relationship to defendant with Sibley. While defendant was Sibley's stepfather he gave her material things, but she was not allowed to have any friends or boyfriends. She did not tell her mother about the incidents because she was afraid for herself and her family since defendant said he would kill her if she told.

Alice Matheson, defendant's wife and the victim's mother, testified that on 23 February 1991, she slept on the floor beside defendant. She further testified that the victim never had any conversation with her about any alleged rape.

Billy Long and Charles Martin each testified that on 9 May 1991 they were at defendant's house and worked on Martin's truck. After working on the truck, the three men cleared some land for a mobile home site. Neither Long nor Martin saw the victim at defendant's house that day.

The jury found defendant guilty as charged. From sentences imposing prison terms of forty years for each offense, defendant appeals.

*Attorney General Michael F. Easley, by Associate Attorney General Norma L. Ware, for the State.*

*Hyde, Hoover & Lindsay, by R. Scott Lindsay, for defendant-appellant.*

WELLS, Judge.

Defendant's only argument brought forward on appeal is that the trial court erred by allowing the introduction of evidence of prior bad acts. Specifically, defendant contends Caroline Sibley's testimony concerning prior sexual assaults was not admissible pursuant to N.C. Gen. Stat. § 8C-1, Rule 404 because it was admitted to show that he acted in conformity therewith. Defendant also contends that even if the testimony were admissible pursuant to Rule 404, its probative value was substantially outweighed by the danger of unfair prejudice in part because the prior bad acts were so remote in time. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 404(b) provides:

(b) *Other crimes, wrongs, or acts.* — Evidence of other crimes, wrongs, or acts is not admissible to prove the character

of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

This rule is a general rule of inclusion of relevant evidence of other crimes, wrongs, or acts by a defendant, subject to the one exception requiring exclusion if its only probative value is to show the defendant had a propensity or disposition to commit an offense like the one charged. *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990). Even though the evidence may show the defendant's propensity to commit a particular offense, it is admissible if it also "is relevant for some purpose *other than* to show that defendant has the propensity for the type of conduct for which he is being tried." *State v. Morgan*, 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401.

The question first before us is whether the testimony of Caroline Sibley was relevant for a purpose other than to show defendant had the propensity to commit the type of offense charged. We conclude that it was, and that it was properly admitted by the trial court.

Prior to ruling that the testimony of Caroline Sibley was admissible, the trial court conducted a *voir dire* hearing. At the conclusion of the hearing the trial court made findings as to the similarities of the sexual assaults committed against Sibley and the victim in this case:

(a) In both instances on occasions the defendant would shut and lock a door, take the step-daughters by the hand and walk them to the bedroom.

(b) The defendant professed his love for both of the step-children.

(c) Both step-children testified that the defendant would not let them go out on dates.

(d) Both step-children testified that the defendant would approach the step-daughters from behind, penetrate the vagina, and then withdraw before ejaculation.

(e) Both step-daughters testified that the defendant threatened to hurt each if they told and threatened to kill both of them if they reported the incidents.

(f) The defendant had sexual intercourse in a top position in addition to on the side, and that was testified to by both of the step-daughters.

Based upon the findings, the trial court concluded that Sibley's testimony was relevant "for the intent to establish a common plan or scheme embracing the commission of these crimes."

We hold that the testimony of Caroline Sibley was admissible. The testimony was substantially similar to that of the victim in this case and was therefore relevant to show a common plan or scheme on the part of defendant to sexually assault his stepdaughters. *See State v. Boyd*, 321 N.C. 574, 364 S.E.2d 118 (1988).

Having found that the testimony of Caroline Sibley was relevant and admissible pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b), we must now determine whether it should have been excluded pursuant to N.C. Gen. Stat. § 8C-1, Rule 403, which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"[T]he period of time elapsing between the separate sexual events plays an important part in this balancing process, especially when the State offers the evidence of like misconduct to show the existence of a common plan or design for defendant's perpetration of this sort of crime." *State v. Shane*, 304 N.C. 643, 655, 285 S.E.2d 813, 820 (1982), *cert. denied*, 465 U.S. 1104, 104 S.Ct. 1604, 80 L.Ed.2d 134 (1984).

In this case, Caroline Sibley testified that defendant sexually assaulted her on a weekly basis from 1979 until 1981. Sibley further testified on *voir dire* that defendant went to prison in Colorado in 1982 and was released from prison in 1984. In 1984, defendant began living with the victim's mother, and in November 1984 he

began having forcible intercourse with the victim two or three times a week until she reported it in 1991.

Despite the fact that the offenses charged in this case occurred at least ten years after the last sexual assault on Sibley, the assaults on Sibley were not too remote in time so as to make them inadmissible. Our Supreme Court has stated:

> While a lapse of time between instances of sexual misconduct slowly erodes the commonality between acts and makes the probability of an ongoing plan more tenuous, the continuous execution of similar acts throughout a period of time has the opposite effect. When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan.

*State v. Shamsid-Deen*, 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989). (Citations omitted.) The evidence shows that defendant continuously assaulted Caroline Sibley weekly from 1979 to 1981 and the victim weekly from 1984 to 1991. The only break in defendant's pattern of assaults on his stepdaughters was during the time he was incarcerated in Colorado, and defendant should not be allowed to assert remoteness due to his lack of opportunity to continue his sexual assaults on his stepdaughters. *See State v. Riddick*, 316 N.C. 127, 340 S.E.2d 422 (1986); *State v. Hall*, 85 N.C. App. 447, 355 S.E.2d 250, *disc. review denied*, 320 N.C. 515, 358 S.E.2d 525 (1987).

Defendant's other contentions concerning the probative value of Sibley's testimony being outweighed by the danger of unfair prejudice are likewise without merit. The balancing of probative value against the danger of unfair prejudice is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent abuse of that discretion. *State v. Bagley*, 321 N.C. 201, 362 S.E.2d 244 (1987), *cert. denied*, 485 U.S. 1036, 108 S.Ct. 1598, 99 L.Ed.2d 912 (1988). Defendant has failed to show that the testimony of Sibley was unduly prejudicial. *See State v. Gordon*, 316 N.C. 497, 342 S.E.2d 509 (1986). We hold that the trial court did not abuse its discretion in concluding that the probative value of Sibley's testimony outweighed the danger of unfair prejudice.

In summary, we have found that the testimony of Caroline Sibley was relevant and admissible pursuant to N.C. Gen. Stat.

§ 8C-1, Rule 404(b) to show a common plan or scheme. We have further found that the acts to which Sibley testified were not so remote in time as to make the testimony unfairly prejudicial and that defendant has failed to show that the trial court abused its discretion in concluding that the probative value of the testimony outweighed any danger of unfair prejudice pursuant to N.C. Gen. Stat. § 8C-1, Rule 403. Defendant's argument that the trial court erred by admitting Sibley's testimony is without merit.

We hold defendant had a fair trial, free from prejudicial error.

No error.

Judges EAGLES and McCRODDEN concur.