STATE OF NORTH CAROLINA, PLAINTIFF-APPELLEE v. WILBUR HARRY JACOB, JR., DEFENDANT-APPELLANT

No. 9221SC1311

(Filed 15 February 1994)

1. **Evidence and Witnesses § 372 (NCI4th) — rape of daughter — earlier rape of another daughter — admissibility to show plan or scheme**

   In a prosecution of defendant for first-degree statutory rape of his daughter, the trial court did not err in denying defendant's motion to suppress evidence of defendant's molesta-

tion of another daughter several years earlier, since the daughter's testimony was sufficiently similar to that recounted by the victim concerning the manner of abuse to show a common plan or scheme, and remoteness in time did not make the daughter's testimony inadmissible because it was due to defendant's having almost no access to the daughters of his first marriage following his divorce.

**Am Jur 2d, Evidence § 126.**

2. **Constitutional Law § 367 (NCI4th) — consecutive life terms — no cruel or unusual punishment**

The trial court did not err in sentencing defendant to consecutive terms of life imprisonment, since imposition of consecutive terms, standing alone, does not constitute cruel or unusual punishment.

**Am Jur 2d, Criminal Law §§ 625 et seq.**

Appeal by defendant from judgments entered 23 July 1992, by Judge W. Douglas Albright in Forsyth County Superior Court. Heard in the Court of Appeals 28 September 1993.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Henry T. Rosser, for the State.*

*Wilson, DeGraw & Johnson, by Thomas A. Fagerli, for defendant appellant.*

COZORT, Judge.

Defendant Wilbur Harry Jacob, Jr., was convicted of two counts of first-degree statutory rape. Defendant appeals the judgments entered 23 July 1992, contending (1) the trial court erred in denying defendant's motion in limine to suppress the introduction of evidence of the molestation of one of defendant's other daughters; and (2) the trial court erred in sentencing defendant to consecutive terms of life imprisonment. We conclude defendant received a fair trial free from prejudicial error.

At trial the State's evidence included testimony by defendant's daughter, "A.J.," who testified to three acts of sexual intercourse between her and her father when she was ten years old. A.J. testified that on each occasion, her father came into her room, forced her to pull down her pants and lie face down on the bed,

and raped her. A.J. did not come forth with accusations that defendant had sexual intercourse with her until her older stepsister, B.L., revealed that B.L. had been sexually molested by defendant when she was nine years old. When the accusations by B.L. came to light, A.J.'s mother confronted A.J., who admitted that defendant had sexually molested her.

Dr. Michael Lawless, an expert in pediatrics, testified that he examined A.J., and, in his opinion, she had been sexually molested. Dr. Lawless based his opinion not only on his physical examination, but also on A.J.'s story, "what she said, how she told it," and because the injury pattern was "consistent with sexual molestation."

B.L. testified that she was the victim's stepsister. B.L., who was twenty-two years old at the time of trial, testified that she experienced flashbacks to when her father abused her as a young girl. B.L. testified that her dreams triggered memories of her father coming into her bedroom, putting her face down on the bed, and then "when I got up to use the bathroom it would burn." She testified that the only statement she remembered him making was that "when I started my period he'd have to stop." As a result, B.L. told her mother that she had started her menstrual period when she was nine years old, when in actuality, she began menstruating at age eleven.

Toni Southern testified that she was defendant's daughter and B.L.'s younger sister. Ms. Southern testified that during visits with their father when the girls were nine or ten years old, he would climb into bed with them. Ms. Southern stated that on one such occasion, "I was against the wall and I had my leg over [B.L.'s] and once he got in the bed he pushed my leg off of hers and whenever—that's all that I remember but whenever he left the room, she was crying and then after we had got up there was blood on the sheets."

Defendant testified denying all allegations of sexual abuse.

[1] Defendant first contends the trial court erred in denying defendant's motion in limine to suppress the evidence of molestation of defendant's daughter B.L. Specifically, defendant objected to the introduction of evidence of prior bad acts pursuant to N.C.R. Evid. 404(b), alleging the events were too remote in time to the acts which were the subject of this prosecution. Defendant also alleges that, even if the testimony was admissible under Rule 404,

its probative value was outweighed by its prejudicial effect, in violation of N.C.R. Evid. 403.

N.C. Gen. Stat. § 8C-1, Rule 404(b) permits evidence of other crimes, wrongs or acts to be introduced to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident. North Carolina courts have been consistently liberal in admitting evidence of similar sex offenses in trials on sexual crime charges. *State v. McCarty*, 326 N.C. 782, 785, 392 S.E.2d 359, 361 (1990). Evidence of other similar sexual offenses may be admitted to show a common scheme or plan to molest children. *See, i.e., State v. DeLeonardo*, 315 N.C. 762, 340 S.E.2d 350 (1986); *State v. Goforth*, 59 N.C. App. 504, 297 S.E.2d 128 (1982), *rev'd on other grounds*, 307 N.C. 699, 307 S.E.2d 162 (1983).

In the present case, pursuant to *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986), prior to admitting the evidence, the trial court conducted a voir dire of B.L. to determine the admissibility of her testimony. The trial court subsequently made the following findings of fact:

(1) [B.L.] is the daughter of the defendant by his previous wife Vicky Hilton.

(2) [B.L.] was living in the same home as the defendant during her prepubescent years.

(3) During the time that [B.L.] was living in the home, the defendant was an adult male in a position of authority.

(4) There came a time at night when the defendant came into the bedroom where [B.L.] was situated. He put her on her stomach, pushed the leg of Toni Southern off of [B.L.] and thereafter took such liberties with her person that blood was observable on the sheets when she got up and that she burned when she urinated after such contact.

(5) The defendant came by night into the bedroom clad only in his underwear.

(6) The defendant told [B.L.] he would have to stop when she started her period.

(7) The defendant's words and deeds were such that [B.L.] was afraid and had dreams as a result.

(8) This type of activity took place on more than one occasion.

(9) Approximately one year ago in July, [B.L.] disclosed to her mother Vicky Hilton, then divorced from the defendant, that "daddy had molested her when she was young several times."

(10) These assaults by the defendant took place when [B.L.] was nine or ten years old but she was not menstruating at the time.

(11) [B.L.'s] sister Toni Southern was in the bedroom when the defendant entered on one occasion and recalls the defendant pushing her leg off of [B.L.]. She observed [B.L.] crying after the defendant had been there and observed blood on the sheets when [B.L.] got up although the defendant did not touch her (Toni Southern) at that time.

(12) At the time he assaulted [B.L.] and at the time he assaulted [A.J.], the defendant harbored a common plan and scheme to molest his minor prepubescent daughters by way of initiation and instruction in sexual intercourse and to take sexual advantage of them as a result.

(13) The defendant confirmed his on-going plan to molest his minor prepubescent daughters and his unnatural disposition toward them in a conversation with Alma Shore when he stated to her "when my daughters get old enough to know about love, he was going to be the one to teach them."

(14) This on-going plan and scheme to molest his minor prepubescent daughters and his unnatural disposition toward them existed at the time he assaulted [B.L.] and thereafter carried over and continued unabated and undiminished during the interval of time between the last assaultive episode against [B.L.] and the start of the first of the assaultive behavior against [A.J.].

Based on the foregoing findings, the trial court concluded that the evidence was admissible to show a common plan or scheme by defendant to molest his prepubescent daughters and to disclose the defendant's unnatural lust on his part toward his daughters, which remained unabated and undiluted by the passage of time. The trial court further concluded that the ongoing plan or scheme

transcended the time between the last assaultive episode against B.L. and the time of the first assaultive behavior toward the victim, since the plan was for defendant to be the first individual to initiate sexual intercourse with his daughters whenever, in his eyes, they came of age.

In *McCarty*, a case with facts similar to the case at bar, our Supreme Court found no error where the victim's twenty-two-year-old stepsister testified that the defendant father had molested her from the time she was nine years old until she was 18. The Court determined that the testimony was admissible to show a scheme or plan by defendant to molest his stepdaughter and daughter. *McCarty*, 326 N.C. at 785, 392 S.E.2d at 361. In order to be admissible, evidence of prior sexual misconduct admitted to show a common plan or scheme must be sufficiently similar in nature and not too remote in time. *State v. Davis*, 101 N.C. App. 12, 19, 398 S.E.2d 645, 649 (1990), *disc. review denied*, 328 N.C. 574, 403 S.E.2d 516 (1991). As in *McCarty*, B.L.'s testimony was admissible to show a common plan or scheme to sexually molest his young daughters.

First, B.L.'s testimony in the case below was sufficiently similar to the testimony recounted by A.J. concerning the manner of abuse. Both daughters testified that defendant had forcible sexual intercourse with them after placing them face down on the bed. The acts occurred when each girl was nine or ten years old. Neither reported the abuse during that time because defendant said he would hurt them and they would be in trouble.

Defendant does not deny that the manner of abuse was sufficiently similar; rather, defendant's main contention is that the incidents of abuse were too remote in time to be admissible. Defendant claims the holding in *State v. Jones*, 322 N.C. 585, 369 S.E.2d 822 (1988), *disc. review denied*, 328 N.C. 95, 402 S.E.2d 423 (1991), governs the present case and bars the evidence from being admitted due to remoteness in time. The Court in *Jones* determined that remoteness in time affected the admissibility of the evidence. *Id.* at 589-90, 369 S.E.2d at 825. In *Jones*, the acts had been committed seven years prior to the onset of the conduct for which Jones was convicted. The trial court failed to make specific findings indicating the significance of the remoteness factor, and the omission was found to be error. Because the trial court made the requisite findings in the present case, we find *Jones* to be distinguishable.

The facts below are more comparable to a recent case in this Court, *State v. Matheson*, 110 N.C. App. 577, 430 S.E.2d 429 (1993). We held in *Matheson* that, in a prosecution for second degree rape against the defendant father, testimony by another stepdaughter concerning earlier rapes was admissible under N.C.R. Evid. 404(b), since the acts testified to were similar to the conduct toward the victim. The Court found the evidence relevant to show a common plan or scheme on the part of defendant to sexually assault his stepdaughters. Despite the fact that the rape of the other step-daughter had occurred ten years earlier, the acts were not so remote in time to deem the evidence inadmissible. The Court explained:

> While a lapse of time between instances of sexual misconduct slowly erodes the commonality between acts and makes the probability of an ongoing plan more tenuous, the continuous execution of similar acts throughout a period of time has the opposite effect. When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan.

*Matheson*, 110 N.C. App. at 583, 430 S.E.2d at 432 (quoting *State v. Shamsid-Deen*, 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989) (citations omitted) ).

The remoteness factor must be examined carefully to determine whether the plan or scheme of molestation was interrupted or ceased due to underlying circumstances, and then resumed in a continual fashion. For example, in *State v. Davis*, this Court determined that a ten-and-one-half-year period between the defendant's prior sexual misconduct and the crime for which he was tried was not so remote in time as to render the evidence inadmissible, since the defendant had been in prison for the majority of that time. *Davis*, 101 N.C. App. at 20, 398 S.E.2d at 650.

Here, the remoteness in time was due to defendant's having almost no access to the daughters of his first marriage following his divorce. Defendant divorced Vicky Hilton in 1975, and he seldom had contact with B.L. and Toni Southern thereafter. In July of 1975 defendant married A.J.'s mother. A.J. was not born until 16 April 1979, and did not reach a prepubescent age until several years later. One of the State's witnesses testified the defendant told her that when his daughters "got old enough to know about love," that "he was going to be the one to teach them." As in

*Davis*, we find that circumstances prevented the defendant from carrying out his plan to sexually molest his daughters for an extended period of time, however, once the opportunity presented itself, defendant resumed the sexual abuse. Accordingly, we conclude that the remoteness in time in the present case does not make B.L.'s testimony regarding defendant's prior sexual abuse inadmissible.

Furthermore, the evidence was not violative of N.C.R. Evid. 403. Although the evidence was harmful to defendant's case, its probative value outweighed the possibility of unfair prejudice. We conclude the trial court did not err in admitting the evidence pursuant to Rules 404(b) and 403.

[2]   Defendant next alleges that the trial court erred in sentencing defendant to consecutive terms of life imprisonment. Defendant claims the imposition of consecutive life sentences constituted an abuse of discretion and cruel and unusual punishment. Defendant's argument is unpersuasive. Pursuant to N.C. Gen. Stat. § 15A-1354(a) (1988), a trial court has express authority to impose a sentence consecutive to any other sentence imposed at the same time. And, "[t]he imposition of consecutive sentences, standing alone, does not constitute cruel or unusual punishment." *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983). We find no abuse of discretion or constitutional violation in the sentencing.

No error.

Judges JOHNSON and McCRODDEN concur.