[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 286 
On November 19, 1993, the appellants, Burnum Gilbert Smith and his wife Lisa Smith, were charged in separate indictments with the following offenses: Burnum Gilbert Smith was charged with (1) sodomy in the first degree and sexual abuse in the first degree (case no. 93-337, involving victim T.B.); (2) rape in the first degree, sodomy in the first degree, and sexual abuse in the first degree (case no. 93-338, involving victim S.B.); and (3) sexual abuse in the first degree and sodomy in the first degree (case no. 93-339, involving victim B.B.). Lisa Smith was charged with (1) incest and sexual abuse in the first degree (case no. 93-340, involving victim B.B.); (2) sexual abuse in the first degree (case no. 93-341, involving victim T.B.); and (3) rape in the first degree and sexual abuse in the first degree (case no. 93-342, involving victim S.B.). The appellants' cases were consolidated, and trial began on September 19, 1994. On the second day of trial, the appellants were granted a mistrial. On May 31, 1995, a second trial began. *Page 287 
Both appellants were found guilty of all the charges, except Lisa Smith was acquitted of the charge of rape. Burnum Gilbert Smith was sentenced to life imprisonment on the rape conviction and each of the 3 sodomy convictions and to 10 years' imprisonment on each of the 3 sexual abuse convictions. Lisa Smith was sentenced to life imprisonment on the incest conviction and on each of the 3 sexual abuse convictions. The Smiths appealed to this Court on October 23, 1995. However, while that appeal was pending, they also each filed a Rule 32, Ala. R. Crim. P., petition in the circuit court. Following a stay of their appeal, the circuit court denied the appellants' Rule 32 petitions. The case was resubmitted to this Court on October 24, 1997.
The State's evidence at trial tended to show that, when the appellants married in July 1991, Lisa Smith was the mother of three children S.B., a girl then 10 years old; B.B., a boy then 6 years old; and T.B., a girl then one year old. In August 1993, the children were removed from the Smiths' custody after S.B.'s teacher reported that S.B. had been sexually abused. S.B. testified at trial that, over a period of approximately two years, her stepfather Burnum Gilbert Smith had touched her genitals with his hand, his penis, his mouth, and a dildo; that he had put his penis into her mouth and had ejaculated; and that he had had intercourse with her. She said that her stepfather also engaged in numerous sexual acts with her brother and sister and forced her to have sexual intercourse with her brother, B.B. S.B. also testified that her mother touched her on her genitals and watched as she performed many of the sexual acts with her stepfather. S.B. admitted that she had previously falsely accused her Uncle Don, the husband of her mother's sister, of rape. B.B. testified that, during that same two-year period, his stepfather had put his hand on B.B.'s penis and also had put his own penis into B.B.'s mouth and had ejaculated. B.B. said that his stepfather engaged in sexual acts with his sisters and also had forced him to place his penis onto his mother's genitals. He stated that his mother was present during many of the sexual acts with his stepfather. T.B. testified that her stepfather had done "bad things" to her and to her brother and sister. She illustrated with anatomical dolls that her stepfather had touched her genitals and her mouth with his penis, and she stated that her mother was present during these acts.
Meg Wood, a county social worker, testified that she obtained a pick-up order for B.B. and S.B. on September 16, 1993, and that she removed them from the Smiths' home. She subsequently obtained a second order and picked up T.B. from Mr. Smith's parents on September 28. B.B. and T.B.'s statements to her concerning their mother and stepfather's actions were essentially the same as their testimony at trial. Georgia Murray, a children's therapist, testified that she began working with the three children after they had been removed from their home. B.B. and T.B.'s statements to her also were similar to their testimony at trial. Two of Burnum Gilbert Smith's adult daughters testified that their father had engaged in sexual acts with them when they were living at home. M.A.A., who was 38 years old at the time of trial, said that her father had had sexual intercourse with her when she was 12 years old and again when she was 15 years old and that her natural mother was aware of these acts. B.H., who was 36 years old at the time of trial, testified that her father had sex with her from the time she was 12 or 13 years old until she left home at age 18. She said that her mother had joined them in bed every time except the first.
Lisa Smith testified that she and her husband had disciplined her children physically, but she denied that either of them had ever committed any sexual acts with them. She said that S.B. often told lies and that she did not like her stepfather. Burnum Gilbert Smith testified that his *Page 288 
natural daughters did not like his current wife, Lisa Smith; He said that he had never had an improper relationship with his stepchildren or his natural daughters and that their mothers would not have allowed such acts.
The issues presented in the appellants' direct appeal are set out in Part I. The issue presented in their Rule 32 petitions is set out in Part II.
 I. A.
The appellants contend that the trial court erred in denying their motion for a mistrial, which alleged that, their second trial, following a mistrial, violated their right to be free from double jeopardy. They also contend that the issue of whether the prosecutor was guilty of misconduct should have been heard by a jury because, they say, the prosecutor gave them a copy of a D.H.R. report at trial solely to "goad them into asking for a mistrial" when he saw that "he could not successfully use certain statements" contained in the report at trial.
In Spears v. State, 647 So.2d 15, 21-22 (Ala.Cr.App. 1994), this Court stated that, when a defendant has moved for, and been granted, a mistrial, double jeopardy bars a retrial only when the government's conduct in the first trial is "intended to `goad'" the defendant into making the motion. Here, the appellants failed to offer any evidence of such an intent on the part of the prosecution. On the first day of the appellants' first trial, after the jury had been empaneled and sworn but before any other proceedings had begun, the appellants moved for production of a D.H.R. report they claimed had not been provided in discovery. The trial court ordered the prosecutor to provide the report, and the prosecutor complied. The appellants subsequently moved for a mistrial, on the ground that they had been prejudiced by the delay.
At the hearing on the motion, the prosecutors stated that they understood that the appellants had been furnished a copy of the D.H.R. report before trial but that, because they could not say for certain that the appellants had received the report, a mistrial should be granted because they "didn't want this court to do anything that would cause this case to come back here." The court then granted the appellants' motion for a mistrial. On the first day of the retrial, the appellants again moved for a mistrial. At the hearing on that motion, the appellants stated that they intended to call the prosecutor, the author of the D.H.R. report, and the typist of the report as witnesses. However, they made no offer of proof as to the expected testimony of the witnesses or as to any other evidence they had that tended to prove that the prosecution' had intentionally goaded them to seek a mistrial in the first trial.[1] In light of the complete absence of any evidence of intent on the part of the prosecution, and in light of clear evidence that the report was produced pursuant to a specific order of the trial court, the judge did not err in determining that a jury trial on the appellant's motion was not required in denying the motion.
 B.
The appellants contend that the trial court erred in admitting evidence of collateral acts allegedly committed by Burnum Gilbert Smith against his daughters. Burnum Gilbert Smith argues that the incidents were too remote because one daughter testified that the acts against her occurred "some 26 years before the trial of the case" and the other said that she had been abused "at least 22 years before . . . trial." He also argues that the acts did not closely resemble the present offenses *Page 289 
because he "supposedly acted alone" in the prior offenses and, in the present case, he was charged with the "deviant behavior" of "jointly raping, sodomizing and molesting" the victims. Lisa Smith argues that the trial court's limiting instruction failed to cure the prejudicial impact of the evidence of Burnum Gilbert Smith's collateral acts.
The record reveals that Burnum Gilbert Smith incorrectly calculated the time — he used the period between the prior acts and the trial, rather than the period between the prior acts and the present ones. M.A.A. testified that one incident occurred in 1970 and another in 1973,[2] and B.H. testified that the abuse" against her began in 1971 or 1972 and ended in 1977.[3]
Testimony established that S.B. was abused in August 1991, B.B. in November 1991, and T.B. in August 1993. The time between the acts therefore was a minimum of 18 and a maximum of 20 years for M.A.A. and a minimum of 14 and a maximum of 16 years for B. H.
In Cofer v. State, 440 So.2d 1116, 1118-19 (Ala.Cr.App.), rev'd in part on other grounds, 440 So.2d 1121 (Ala. 1983), the Alabama Supreme Court stated:
 "`Ordinarily, remoteness of time affects the weight and probative value of evidence rather than its admissibility. . . .'
 "Remoteness of time alone does not render a prior, similar act or offense inadmissible. . . .
 "Where the competency of evidence is doubtful "because of remoteness, the better practice is to admit the evidence, leaving it to the jury to determine its credibility and weight. . . .
 "While a span of ten years between acts bears close scrutiny, it is not beyond the" pale of reason. . . ."
(Emphasis in original; citations omitted.)
An additional factor with regard to the intervals in the present case is that the appellant's alleged abuse of his natural children did not end until the younger one left home, and his abuse of his stepchildren began only one month after they moved in with him. During the intervening period, the appellant apparently had no young children living in his home.
In Hooks v. State, 212 Ga. App. 878, 443 S.E.2d 532 (1994), the Georgia court held that the fact that approximately 20 years had intervened between a current charge of aggravated sodomy and a prior conviction of kidnapping and rape was not controlling as to whether evidence of the earlier acts was admissible, particularly in light of the fact that the defendant was in prison for most of that time. Similarly, in State v. Jacob, 113 N.C. App. 605,439 S.E.2d 812 (1994), the North Carolina court held that evidence of a prior incident of forcible sexual intercourse that occurred 10 years earlier was admissible in trial on a current charge of forcible sexual intercourse, because the remoteness was due to the defendant's having had almost no access to his older daughters following a divorce. The court explained that "the remoteness factor must be examined carefully to determine whether the plan or scheme of molestation was interrupted or ceased due to underlying circumstances, and then resumed in a continual fashion."
In the present case, Burnum Gilbert Smith's ongoing molestation of the young children living in his home was interrupted when his natural daughter moved out. It resumed almost immediately when his stepchildren moved in. In light of Smith's limited access to his victims during the intervening years, the intervals of 14 and 18 years are not so remote as to render evidence of the prior offenses inadmissible.
With regard to the alleged dissimilarity of the offenses, the testimony established *Page 290 
that Burnum Gilbert Smith engaged in sexual intercourse with his two natural daughters, sexual intercourse with his older stepdaughter, sodomy with his stepson, and simulated intercourse with his infant stepdaughter. These acts clearly are similar, particularly in light of the victims' age at the time of the offenses. All of the acts occurred in the Smith's home, while the children were living with him; the children's mothers were aware of his actions; and the mothers also were present during most of the incidents. A collateral act of sexual misconduct need not match precisely the charged offense for evidence of the collateral act to be admissible. Register v. State, 640 So.2d 3
(Ala.Cr.App. 1993).
With regard to the trial court's limiting instruction, the judge informed the jury before the testimony of M.A.A. that her testimony "is offered solely in the cases wherein B.G. Smith is the defendant, and is not offered in the cases . . . where Lisa Smith is the defendant." Lisa Smith's counsel, prior to B.H.'s testimony, requested that the instruction be made "a little stronger." The court then stated:
 "Ladies and gentlemen, yesterday I told you that the testimony of this witness you have just heard was absolutely not to be considered by you in connection with the cases of Lisa Smith. I expect that we are about to hear another witness, and I'll instruct you now that this next witness, as I understand it, is in the same situation and the same instruction applies that this testimony has no bearing on your consideration of the cases of Lisa Smith. I'm sure that you have taken that to heart and understand it. Thank you."
In light of the trial court's strong instruction, the appellant's lack of an objection, and the absence of any evidence of prejudice, there is nothing on which this Court can predicate a finding of error.
 C.
The appellants contend that the trial court erred in admitting out-of-court testimony by the victims without conducting a trustworthiness hearing pursuant to § 15-25-32(2)b., Ala. Code 1975. They also contend that the court's failure to rule on the trustworthiness of the statements before the statements were admitted deprived them of the opportunity to question Meg Wood, Georgia Murray, and the victims regarding the circumstances under which the statements were made.
Section 15-25-37, Ala. Code 1975, sets out 13 factors for the trial court to consider in determining whether the out-of-court statement of a child witness is trustworthy. Section 15-25-38, Ala. Code 1975, requires the court to record and support with findings its rulings concerning such a statement.
In the present case, after Meg Wood testified regarding the children's statements the trial judge ruled with regard to the statements' trustworthiness. He specifically noted his satisfaction that the statements concerned the children's "personal life events," and also noted that "the timing of the statements, the fact that the statements were heard by more than one person, and the nature and duration of any alleged abuse" were factors in his finding that the statements were trustworthy. Thereafter, at the close of the State's case and after Georgia Murray had testified, the judge entered a second trustworthiness ruling. He stated that he had carefully considered the out-of-court statements in light of 13 factors set out in § 15-25-37, that he had had the opportunity to observe the children and the witnesses and to hear their testimony, and that he was satisfied that the statements possessed the guarantees of trustworthiness required by the Code.
Section 15-25-38 requires the trial court to state for the record its findings concerning trustworthiness, but the statute does not mandate a hearing or specifically limit the time within which the court must state the findings. The procedure used by the court in the present case was not reversible *Page 291 
error because it allows this Court to determine that the trial court's findings are supported by the record on appeal. It is clear from the record that the appellants had a sufficient opportunity to question the witnesses and the victims about the out-of-court statements during cross-examination.
 D.
Burnum Gilbert Smith contends that the trial court erred in failing to require the State to elect which incidents were to serve as the basis of each count against him. He also contends that he was entitled to a judgement of acquittal with regard to the offenses alleged to have been committed against B.B. and T.B. because a piece of paper provided to him by the State indicated two instances with B.B. in the summer of 1991 and B.B. testified at trial that the event took place in 1992. In addition, he says, T.B. did not state in her trial testimony when the events in question occurred. In his reply brief to this court, he also argues that the dates supplied by the State were not sufficiently specific.
Burnum Gilbert Smith's contentions concerning election are not supported by the record on appeal. The prosecutor informed the trial court that he had told Lisa Smith's counsel the dates he planned to use "a couple of months" before the setting of the case. On September 19, prior to trial, Burnum Gilbert Smith's attorney stated that he had not received the dates. The prosecutor then furnished the dates to him, as instructed by the court, by writing them on a piece of paper that was subsequently identified as Defendant's Exhibit 13.
Burnum Gilbert Smith's second contention is somewhat confusing because he failed to include Exhibit 13 in the record on appeal. However, it appears from the trial transcript that the date provided by the prosecutor for the, offense involving B.B. was November 1991 and the date for the offense involving T.B. was August 1993. B.B. testified on direct examination that he was born on November 26, 1984, and the events giving rise to the relevant sodomy and sexual abuse counts occurred just before his seventh birthday. On cross-examination, B.B. stated that the year was 1992. This testimony was sufficient to establish a prima facie case with regard to both offenses, and any conflict in the evidence was a question for the jury.
T.B. testified that the abuse against her occurred approximately one month before she was placed into foster care. Although T.B. did not indicate a date, other testimony established that she had been removed from the Smiths and put into foster care in September 1993. The testimony of both children therefore was sufficient evidence for the trial court to overrule the appellant's motion for a judgment of acquittal.
With regard to the issue of specificity, in J.D.S. v. State,587 So.2d 1249, 1256 (Ala.Cr.App. 1991), this Court, quoting 23A C.J.S. Criminal Law § 1214(d) (1989), stated:
 "`The election between acts should be such as to fix definitely the transaction relied on, but its sufficiency to some extent at least is discretionary with the trial court.
 "`It is enough that it be as definite as as possible from the evidence where, from the information, the evidence, and the election, accused is informed as to the transaction, or the jury could not be misled as to the particular charge submitted to them.'"
Here, given the evidence available from the child witnesses, the dates elected by the State were as definite as possible, and they were sufficient to inform Smith as to the transaction and the jury as to the particular charge it was to consider. Therefore, the trial court did not abuse its discretion by finding that the State's election was sufficient.
 E.
Lisa Smith contends that the trial court erred in denying her motion for a mistrial *Page 292 
because, she says, evidence of two prior convictions was improperly admitted by the trial court. She first argues that the convictions should not have been used for impeachment because the crimes did not involve moral turpitude. In addition, she argues that the State's failure to advise her of the convictions or its intent to use them at trial prejudiced her defense because, she says, had her counsel known of the convictions, he could have made a different decision about putting her on the stand.
Section 12-21-162, Ala. Code 1975, provides that a criminal defendant who takes the stand may be impeached by showing that he or she has been convicted of a crime or "moral turpitude." Here, Lisa Smith admitted that she has been convicted of two crimes in Louisiana in 1987: the manufacture of amphetamines and the manufacture of methamaphetamines. Although there is no caselaw directly on point, Lisa Smith's convictions are similar in character to offenses that involve drug possession for purposes than personal use. In Ex parte McIntosh, 443 So.2d 1283, 1286
(Ala. 1983), the Alabama Supreme Court explained the difference between misdemeanor for personal use and trafficking in marijuana as follows:
 ". . . [W]e draw a distintion between possession for personal use and possession for resale to others. We cannot see how felony possession for personal use differs from misdemeanor possession for personal use as an indicium of a witness's future trustworthiness. The legislative choice to punish subsequent personal possessory offenses, mala prohibita in nature, more severely than the initial possessory offense, does not, by itself, change the character of the offense as it relates to moral turpitude.
 "Trafficking in and encouraging others to utilize a controlled substance, such as marijuana, indicates far greater untrustworthiness and depravity of character than personal consumption of a controlled substance. One could logically assume that, because of the illegal nature of trafficking itself, a person would likely lie and operate covertly in order to engage in such selling. On the other hand, personal consumption is likely achieved without such conduct."
(Citations omitted.)
In the present case, Lisa Smith's crimes involved themanufacture, rather than the possession, of drugs for resale to others. However, there was no substantial difference in the character of the two offenses — Lisa Smith's actions encouraged others to use a controlled substance and thus indicated her "untrustworthiness and depravity of character". The trial court did not err in determining that her prior convictions were crimes involving moral turpitude, and that evidence of those convictions could properly be used for impeachment.
Lisa Smith's argument with regard to notification is not supported by the record on appeal. The trial transcript reflects that the prosecutor informed the court that he had discussed Lisa Smith's two prior felony convictions with her counsel the day before she testified. He also stated that he did not receive from Louisiana a certified copy of the convictions until the morning of her testimony. The appellant's counsel did not contend that he was unaware of the prior convictions or dispute the prosecutor's statement concerning the verbal notification. He argued instead that he should have been given notice more promptly. Because it appears from the record that Lisa Smith and her counsel were aware of the prior convictions and the State's intention to use them at trial before she took the stand, the delay in notifying her was error without injury. Rule 45, Ala. R. App. P.
A motion for a mistrial is a drastic remedy that should be used only to *Page 293 
prevent manifest injustice. Ex parte Thomas, 625 So.2d 1156 (Ala. 1993). The ruling of the trial court on the motion will not be reversed unless there is a clear showing of abuse of discretion.Ex parte Jefferson, 473 So.2d 1110 (Ala. 1985). In the present case, there is no evidence that the trial court abused its discretion by denying Lisa Smith's motion for a mistrial.
 F.
The appellants contend that the trial court erred in denying their joint motion for mistrial because the State failed to produce a report sent by its witness Georgia Murray to D.H.R. They argue that the report should have been provided to them in discovery and that, without the report, they were unable to effectively cross-examine the witness or to present their argument concerning the children's out-of-court statements.
The appellants' argument cannot be considered by this Court because it was not preserved for review. The trial transcript reflects that Georgia Murray testified on June 1. At the conclusion of her testimony, the appellants' counsel stated that they might want "to get a copy of that report which we understood we were to have,[4] and ask her some more questions," but they offered no specific objection and made no motion at that time. On the following day, June 2, the appellants moved for a mistrial. Their motion was untimely; therefore, it was properly denied by the trial court.
 G.
The appellants contend that the trial court erred in denying an additional joint motion for a mistrial, which was based upon the trial judge's alleged ex parte communication with prosecutors Lamar Williamson and Charles Robinson. The appellants argue that their claim was not refuted by the trial judge or the State and that the judge made rulings favorable to the State shortly after the communication issue.[5]
The trial transcript reflects that on June 2 counsel for Burnum Gilbert Smith informed the trial judge that Lisa Smith had told him that she had heard a conversation between the judge and the prosecutors the previous day in which "you told Mr. Williamson and Mr. Robinson that the rule applied in some cases, but you were not worried about it in this case because you felt that we had it covered." Counsel argued that the court subsequently ruled for the State with regard to the trustworthiness of the testimony of M.A.A. The trial court summarily denied the appellant's motion for a mistrial.
The appellant's claim is unsupported by the record on appeal. Lisa Smith did not testify with regard to the alleged conversation, and counsel stated that he was not present when it allegedly occurred. There is nothing to indicate that the judge's rulings were linked to any ex parte conversation or that the judge was influenced by the prosecution. The burden of proving bias or prejudice is on the appellant. Hunt v. State,642 So.2d 1060 (Ala. 1994). Because the appellants in the present case failed to meet that burden, their motion for a mistrial was properly denied.
 II.
The appellants raise a single ground in their appeal from the denial of their Rule 32, Ala. R. Crim. P., petitions. They contend that they established that there was newly discovered evidence because one of the victims, B.B., subsequently stated that his testimony at trial was *Page 294 
false. They argue that B.B. was "the only witness that offered direct testimony concerning any acts of sexual abuse" and that, pursuant to M.T., Sr. v. State, 677 So.2d 1223 (Ala.Cr.App. 1995), it is an abuse of discretion not to allow a new trial when a defendant is convicted solely on the testimony of a recanting witness.
However, the record reveals that B.B. did not offer the only eyewitness evidence concerning the sexual acts committed against him. S.B. testified that her stepfather made her and B.B. have intercourse with one another while their mother watched. She also said that she saw the mother touch B.B.'s penis with her hand and saw them engage in sexual intercourse. T.B. testified that her stepfather did "bad things" to B.B., as well as to her and to S.B. Meg Wood and Georgia Murray offered circumstantial evidence concerning the acts committed by the appellants. Wood said that B.B. told her that his stepfather put his penis into B.B.'s mouth. B.B. also told her that his stepfather ordered him to engage in intercourse with his mother, and his mother told him that this behavior was "okay." Murray's testimony was similar, except that B.B illustrated with anatomical dolls the act of intercourse with his mother. Based on the record, the appellants clearly were not convicted solely on the testimony of B.B.
The appellants also argue that their Rule 32 petition should have been granted, applying the four factors set out in Ex parteFrazier, 562 So.2d 560 (Ala. 1989). They argue that the trial court should have been reasonably satisfied from the evidence as to the following: (1) that the testimony given by B.B. at trial was false; (2) that there was a significant chance that, had the jury heard the truth, it would have reached a different result; (3) that the evidence tending to prove B.B.'s perjury had been discovered since trial; and (4) that the evidence could not have been discovered before or during trial through the exercise of due diligence.
At the hearing on the petition, the children's maternal aunt and her husband testified that the three children came to live with them in June 1995. They said that S.B.'s repeated lies led to her removal in February 1997 and that B.B. then told the uncle's son and the two of them that he had lied during the appellant's trial. B.B. subsequently repeated his recantation for a D.H.R. employee, a prosecutor, and his guardian ad litem. B.B. testified at the Rule 32 hearing that he and T.B. had not been sexually abused by the appellants, as he had previously stated, although, he said, they had been beaten. B.B. continued to testify that S.B. had been sexually abused. He said that he had lied at the urging of S.B., who feared that evidence of physical abuse alone would be insufficient to ensure that all of them were removed from the appellant's home. He also said that S.B. had told him that she and Meg Wood coached T.B. about private body parts and about what to say happened to her. B.B. admitted on cross-examination that, for approximately two years following the trial, he had not told anyone that his trial testimony was false. He also admitted that his trial testimony had been consistent with numerous statements that he had made to his counselors, the prosecutor, and a prosecutor's assistant. B.B. testified that he was still living with his maternal aunt and uncle, and he admitted that he wanted his mother to get out of prison. B.B.'s uncle admitted that B.B.'s recantation to him and his wife had come after B.B. broke down following hours of questioning.
The trial judge's order of denial stated, in pertinent part, the following:
 ". . . In reaching a decision, the court has considered and taken into account the demeanor of [B.B.]; his opportunity to have knowledge of the facts testified to at trial; the rationale given by him for his recantation at the Rule 32 hearing, the inferences from the evidence of external pressures brought to bear on him prior to and after both trial and recantation; actions that lend credence *Page 295 
to his trial testimony and actions that lend credence to his recantation.
 "The court finds that the testimony in this case does not provide sufficient credible evidence to reasonably satisfy the court that the witness . . . gave false testimony at the trial. The circumstance of his living with his mother's sister for an extended period of time subsequent to trial and at the time of the filing of the present petitions coupled with his testimony weighted toward exonerating . . . his mother . . . while affirming evidence of sexual abuse by [his stepfather] give rise to an inference that pressure has been brought to bear on [B.B] subsequent to his testimony at trial which would tend to discredit his recantation.
 "In order to grant the relief sought by the petitioners herein, the trial court must be reasonably satisfied that testimony given by the witness at trial was false. The court having weighed and considered all the evidence of all the witnesses at the Rule 32 hearing finds that the evidence presented as to a recantation by [B.B.] of his trial testimony fails to reasonably satisfy the Court of the truthfulness of said recantation. . . ."
In Cavender v. State, 629 So.2d 721, 722 (Ala.Cr.App. 1993), this Court stated:
 "The granting or denial of a new trial on the ground of newly discovered evidence is a matter left largely to the discretion of the trial judge, whose decision will be overturned only for an abuse of that discretion. An appellate court, in reviewing a grant or denial of a new trial motion, is obliged to indulge every presumption in favor of the correctness of the trial court's decision."
(Citations omitted).
Based on the record, the trial court did not abuse its discretion by finding that B.B.'s recantation was not credible and that the appellants therefore had failed to meet their burden of proving that his trial testimony was false.
The appellants convictions are affirmed and the trial court's denial of their Rule 32 petitions is affirmed.
AFFIRMED.
LONG, P.J., and BROWN and BASCHAB, J.J., concur.
COBB, J., concurs in result only; without opinion.
[1] The appellants argue in their brief to this Court that the prosecutor's compliance with § 15-25-35, Ala. Code 1975, following the mistrial evidences a motive to provoke a mistrial; however, this argument cannot be considered because it was not presented at the trial court level.
[2] M.A.A. said that the first incident occurred when she was 12 and the second when she was 15, and she moved out when she was 18 years old. She was 38 years old when she testified in June 1995.
[3] B.H. said that the abuse began when she was 12 or 13 years old and ended when she left home at age 18. She was 36 years old when she testified in June 1995.
[4] There is no evidence in the record that the report was ever in the possession of the prosecutor.
[5] The appellants argue in their reply brief that there is evidence of additional ex parte communication before their first trial. We cannot consider this claim because it was not raised in the trial court level.