McMILLAN, Presiding Judge.
This cause was originally docketed as a direct appeal from a delinquency adjudication. However, before a decision was made on direct appeal, the case was remanded to the trial court to adjudicate J.W.’s Rule 32 petition in accordance with the procedure established in Barnes v. State, 621 So.2d 329 (Ala.Crim.App.1992). On remand, the trial court granted J.W.’s Rule 32 petition and dismissed the petitions against him. Although the State gave notice that it appealed the trial court’s judgment granting the Rule 32 petition, this Court held that the State’s notice of appeal was unnecessary under the procedure established in Barnes. Because the State assumed the role of the appellant for all practical purposes after the trial court granted J.W.’s Rule 32 petition, in the body of this opinion this Court has referred to the State as the appellant and J.W. as the appellee, although the actual style of the case indicates otherwise.
The evidence presented by the State tended to show the following: On October 7, 1999, J.W., who was 15 years old, was charged in a petition of delinquency with the offenses of the first-degree rape and first-degree sexual abuse of the victim, C.M., who was 9 years old at that time. On December 17, 1999, the trial began, and after unsuccessful attempts to elicit testimony from the victim, the trial court found her unable to testify because of her immaturity and her emotional state. The trial was continued until April 5, 2000. On March 2, 2000, J.W. filed a motion to dismiss the petition and all charges. On March 6, 2000, the State gave notice of its intent to use at trial out-of-court statements of the victim. The trial court denied the motion to dismiss. On April 5, 2000, after testimony was taken ore tenus, the trial court adjudicated J.W. delinquent. J.W. filed both an oral and a written notice of appeal.
On October 5, 2000, the juvenile court purported to amend the charges of rape and sexual abuse to charge sexual misconduct; it then ordered J.W. released from the Department of Youth Services (“DYS”) without requiring community notification. On October 12, 2000, this Court ordered that the DYS take no action on the trial court’s order. On October 12, 2000, the *999 juvenile court informed this Court that the child victim had recanted, and, therefore, that there was reasonable doubt of J.W.’s guilt. On October 18, 2000, this Court ordered the juvenile court to cite its authority for issuing its order amending the charge, and held that the juvenile court had no jurisdiction over the case while the appeal was pending. On October 16, 2000, J.W. filed a Rule 32 petition in the criminal court, requesting that the case be remanded to the juvenile court. In his petition, •he alleged that the victim had recanted. On October 18, 2000, the juvenile court filed a response with this Court, explaining its actions, and informed this Court that J.W. had filed a Rule 82 petition. On October 19, 2000, this Court ordered the juvenile court to tell what provisions had been made for J.W.’s custody during the pendency of the appeal. On October 20, the juvenile court complied and informed this Court of those provisions concerning J.W.’s care and custody. On November 9, 2000, this Court remanded the cause to the juvenile court to consider the Rule 32 petition.
On November 30, 2000, a hearing was held on the petition, with testimony by the victim’s mother and the mother’s minister. The victim’s mother, who was also J.W.’s aunt, testified that several months after the trial, the victim told her that J.W. did not do anything to her. The victim’s mother testified that she believed that the victim’s father, from whom she was divorced, had forced the victim to make the allegations against J.W. The victim’s mother testified that she took the victim to her minister so that she could tell him about the recantation. The victim’s mother testified that she never believed the victim’s allegations. Additionally, she said she did not believe that anyone had sexually abused the victim. The mother’s minister testified that the victim’s family belonged to his church, but that J.W.’s family did not. He testified, however, that he knew J.W. because he was a friend of his youngest son, and because his father had done construction work on his home and on the church building. Although the minister admitted that he was not a specialist in counseling children who had been sexually abused, he believed the victim was being truthful when she admitted to him that she had wrongly accused J.W. He testified that he was aware that child victims of sexual abuse frequently recanted, and he believed they could be manipulated in a short period of time to say anything. He stated that he called the district attorney’s office, and the Child Advocacy Center to inform them about the victim’s recantation but, he said, they did not appear to be interested. He then testified that he telephoned the trial court and informed it of the details of the recantation. The minister further testified that the victim had told him that other people had touched her in her private parts, and, although he was unaware that he was required to do so, he had provided the names of those people to the district attorney. The victim did not testify at the hearing. On December 11, 2000, at the close of the hearing, the trial court granted the Rule 32 petition ■ and dismissed the petition against J.W. In so doing, the trial court stated,
“The decision I would make is it [the testimony at the Rule 32 hearing] doesn’t help me believe that J.W. was not involved in this or that he was. So the legal requirements there say to me that the evidence — I have had this evidence in this format for a period and it would create enough reasonable doubt that I could not have found the petitions to be true; and therefore, I have to dismiss the petitions that have been filed. That’s what I’m going to do. I don’t feel a whole lot better about the situation because I still feel concerned *1000 about the child that’s in the community who still makes an allegation that she is being touched in the wrong kind of way. And I will have to say to the mother something that does concern me about what you have said to me, if I heard you correctly, is that you don’t think [the victim] has been touched in the wrong way by anyone. Is that what you say?”
On December 20, 2000, the State filed a motion for reconsideration, contending that the juvenile court set aside its original adjudication of J.W. based on an alleged recantation of the child victim, without taking any testimony from the child victim. The State also argued that the court failed to consider the proper factors regarding an alleged recantation, pursuant to M.T. v. State, 677 So.2d 1223 (Ala.Crim.App.1995). Lastly, the State argued that, assuming the trial court’s finding was correct, the proper remedy was a new trial, not a-unilateral ruling by the court dismissing the petition. The trial court denied the State’s motion.
On January 5, 2001, the State gave notice of appeal. On February 5, 2001, this Court set a briefing schedule. On February 6, 2001, this Court determined that a notice of appeal was unnecessary for review of the action of the juvenile court.
The State argues that the trial court erred in dismissing the petition against J.W. based solely on hearsay testimony of the victim’s alleged recantation; it argues that the proper remedy, if indeed the victim recanted, was a new trial.
We are mindful of the trial court’s concern for J.W.’s plight. However, the rules of procedure cannot be circumvented as they have been in the present case. It is the opinion of this Court that the trial court erred in dismissing the charges against J.W. The proper remedy would have been for the trial court to order a new trial, rather than dismiss the charges. See Rule 32.9(c), Ala.R.Crim.P., which provides for the procedure for the entry of orders by the court if the petition is granted, as follows: “If the court [in an eviden-tiary hearing] finds in favor of the petitioner, it shall enter an appropriate order with respect to the conviction, sentence, or detention; to any further proceedings, including a new trial; and to any other matters that may be necessary and proper.” See also the following caselaw, which authorizes a new trial based on newly discovered evidence: Smith v. State, 745 So.2d 284 (Ala.Crim.App.1998); M.T. v. State, supra: Ex parte Janezic, 723 So.2d 725 (Ala.1997); Wilson v. State, 690 So.2d 449 (Ala.Crim.App.1995); Ex parte Frazier, 562 So.2d 560 (Ala.1989). Based upon the language of Rule 32, Ala.R.Crim.P., and Alabama caselaw, we find no authority for the trial court’s dismissal of the charges against J.W.
Essentially, a fair reading of the record indicates that the trial court used the Rule 32 hearing as a vehicle to conduct a new trial. The trial court then applied the “reasonable doubt” standard and dismissed the charges, rather than determining whether a new trial was, in fact, warranted based on newly discovered evidence.
We recognize that the trial in this case was a “bench trial” and that after hearing evidence presented in a new trial, the court may well reach the same result. We, nevertheless, conclude that the trial court was without authority to dismiss the charges against J.W. subsequent to the Rule 32 evidentiary hearing.
For the reasons set out above, we remand this case to the trial court with instructions for it to set aside its order dismissing the charges against J.W. and file a copy of this order as a return to remand within 28 days of the date of this *1001 opinion. The trial court should then restore the case to the court’s docket; require the parties to refile their pleadings; and conduct a new trial.
REMANDED WITH DIRECTIONS. 
COBB, SHAW, and WISE, JJ., concur. BASCHAB, J., concurs specially, with opinion.